MACKINNON–PARKER, INC., Appellant,

v.

LUCAS METROPOLITAN HOUSING AUTHORITY, Appellee.

[Cite as *MacKinnon–Parker, Inc. v. Lucas Metro.
Hous. Auth.* (1992), 84 Ohio App.3d 453.]

Court of Appeals of Ohio,
Lucas County.

No. L–92–062.

Decided Dec. 30, 1992.

*Thomas Wood* and *William Heywood III,* for appellant.

*Beverly Cox* and *Steven Smith,* for appellee.

*Per Curiam.*

This case is on appeal from the May 9, 1991 judgment of the Lucas County Court of Common Pleas, which granted summary judgment to appellee, Lucas County Metropolitan Housing Authority. On appeal, appellant, MacKinnon–Parker, Inc., asserts the following assignment of error:

"The trial court erred in determining that no valid enforceable contract existed between the parties."

On July 10, 1989, appellee issued an "invitation for BIDS" regarding the renovation of Brand Whitlock Homes (the "project") pursuant to R.C. 3735.36. Interested bidders were given bid documents regarding the bid process and specifications for the project. Appellant submitted its bid on August 23, 1989, which was determined to be the lowest bid. A "Notice of Contract Award" was received by appellant about September 26, 1989. Pursuant to appellee's request, appellant continued to submit various documents until it was notified on November 16, 1989 that the Department of Housing and Urban Development had not approved the project. Appellee requested new bids on the project on December 4, 1989.

Appellant brought suit against appellee on January 10, 1990, asserting that appellee had breached its contract with appellant and that appellee had misrepresented to appellant that the Department of Housing and Urban Development had approved the project. On May 9, 1991, the trial court granted summary judgment to appellee on the breach-of-contract claim, finding that there was no contract between the parties. On January 21, 1992, the trial court granted

summary judgment to appellee on the misrepresentation claim, finding that appellee was immune from liability regarding the misrepresentation claim under R.C. Chapter 2744. Although appellant appealed from both judgments of the trial court, its arguments on appeal concern only the May 9, 1991 judgment.

In its sole assignment of error, appellant argues that the trial court erred by finding that no contract existed between the parties. In essence, appellant argues that a contract was formed between the parties by appellant's submission of a bid (the "offer") and by appellee's statements regarding its intent to award the contract and its issuance of a Notice of Contract Award to appellant (the "acceptance"). Appellee argues that no contract existed because no formal written contract was executed in this case, as required by the bid documents and by R.C. 153.12.

Summary judgment is appropriate if:

"the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"  Civ.R. 56(C).

In *Commr. of Highland Cty. v. Rhoades* (1875), 26 Ohio St. 411, the Ohio Supreme Court held that a contract is formed when a party inviting construction bids accepts a proposed bid and gives notice of the acceptance of the bid to the bidder. *Id.* at paragraph one of the syllabus. The only purpose of a later agreement to execute a formal written contract is to evidence the contract entered into. *Id.* at 418. Thus, the bidder may rightfully reject a formal written contract which modified the terms of the original contract. *Id.* at 419. This rule is not applicable, however, where it is understood that the acceptance of the bid and execution of a formal written contract are both conditions to the formation of a contract between the parties. *Hughes v. Clyde* (1884), 41 Ohio St. 339, 340, and *Berkeley Unified School Dist. v. Barnes Constr. Co.* (N.D.Cal.1953), 112 F.Supp. 396, 399. This two-part acceptance of the contract may be imposed by the invitation to accept the bids or by virtue of the fact that the party seeking the bid is authorized by statute to contract only under certain circumstances, *i.e.*, by a formal written contract. *Id.; State ex rel. Cleveland Trinidad Paving Co. v. Bd. of Pub. Serv.* (1909), 81 Ohio St. 218, 90 N.E. 389; *Pfaff Constr. Co. v. Leonard* (1931), 40 Ohio App. 246, 178 N.E. 328; *State ex rel. Greiner v. Bd. of Purchase*

*of Zanesville* (App.1934), 17 Ohio Law Abs. 244;  and *State ex rel. Bolan Constr. Co. v. Dept. of Highways* (App.1933), 15 Ohio Law Abs. 630, affirmed (1934), 127 Ohio St. 587, 190 N.E. 246.

Both parties argue that the language of the bid documents in the case before us support their conclusion regarding the formation of a contract between the parties.  The bid form states in pertinent part as follows:

"2.  In submitting this bid, it is understood that the right is reserved by the Lucas Metropolitan Housing Authority to reject any and all bids.  If written notice of the acceptance of this bid is mailed, telegraphed or delivered to the undersigned within 30 days after the open thereof, or at any time thereafter before this bis [*sic* ] is withdrawn, the undersigned agrees to execute and deliver a contract in the prescribed form and furnish the required bond within ten (10) days after the contract is presented to him for signature."

The Information for Bidders document states in pertinent part:

"Each bid shall be accompanied by cash, an approved surety company bid bond or a certified check upon a solvent bank, made payable to the Lucas Metropolitan Housing Authority in an amount equal to five (5) percent of the bid, tendered as a guarantee that the bidder will, if the award is made to him, enter into a bona fide contract with Lucas Metropolitan Housing Authority for this work and furnish a performance bond required under the specifications within a period of ten (10) days after the awarding of the contract.  If for any reason whatsoever the bidder fails to enter into a proper contract and to execute a guarantee bond as required by the specifications.  [*sic* ] the amount of such guarantee shall be retained by the Lucas Metropolitan Housing Authority as liquidated damages sustained by reason of his failure to do so."

The Instructions to Bidders document states in pertinent part as follows:

"7.  *Bid Security*

"Each bid must be accompanied by cash, certified check of the bidder, or a bid bond prepared on the form of bid bond attached hereto, duly executed by the bidder as principal and having as surety thereon a surety company approved by the Owner, in the amount of 5% of the bid.  Such cash, checks or bid bonds will be returned to all except the three lowest bidders within three days after the opening of the bids, and the remaining cash, checks, or bid bonds will be returned promptly after the Owner and the accepted bidder have executed the contract, or if no award has been made within 30 days after the date of the opening of bids, upon demand of the bidder at any time thereafter, so long as he has not been notified of the acceptance of his bid."

"8.  *Liquidated Damages for Failure to Enter into Contract*

"The successful bidder, upon his failure or refusal to execute and deliver the contract and bonds required within 10 days after he has received notice of the acceptance of his bid, shall forfeit to the Owner, as liquidated damages for such failure or refusal, the security deposit with his bid."

"* * *

"10. *PERFORMANCE AND PAYMENT BOND, EXECUTION OF CONTRACT*

"a.  Subsequent to the award and within ten days after the prescribed forms are presented for signature, the successful bidder shall execute and deliver to the LHA a contract in the form furnished in such number of counterparts as the Local Authority may require."

The Bid Bond states in pertinent part as follows:

"NOW, THEREFORE, if the Principal shall not withdraw said bid within the period specified therein after the opening of the same, or, if no period be specified, within sixty (60) days after the said opening, and shall within the period specified therefor, or, if no period be specified within ten (10) days after the prescribed forms are presented to him for signature, enter into a written contract with the LHA in accordance with the bid as accepted, and give bond with good and sufficient surety or sureties, as may be required, for the faithful performance and proper fulfillment of such contract; or in the event of the withdrawal of said bid within the period specified, or the failure to enter into such contract and give such bond within the time specified, if the Principal shall pay the LHA the difference between the amount specified in said bid and the amount for which the LHA may procure the required work or supplies or both, if the latter amount be in excess of the former, then the above obligation shall be void and of no effect, otherwise to remain in full force and virtue."

The Notice of Contract Award sent to appellant states in pertinent part as follows:

"This is to advise you that your proposal for the above referenced project has been *accepted by this Authority and approved by HUD,* Cleveland.

"We are preparing the necessary Construction Contract documents.  Please contact our office at 259–9533 in order that they may be executed by your firm." (Emphasis added.)

Appellee also contends that it has no power under R.C. 153.12 to contract without a formal written contract.  Appellee relies on that portion of R.C. 153.12 that reads in pertinent part as follows:

"(A) With respect to award of any contract for the construction, reconstruction, improvement, enlargement, alteration, repair, painting, or decoration of a public

improvement made by the state, or any county, township, municipal corporation, school district, or other political subdivision, or any public board, commission, authority, instrumentality, or special purpose district in the state or a political subdivision or that is authorized by state law, the award, and execution of the contract, shall be made within sixty days after the date on which the bids are open."

Appellant argues, in response, that R.C. 3735.36 controls the power of appellee to contract. That section reads as follows:

"When a metropolitan housing authority has acquired the property necessary for any project, it shall proceed to make plans and specifications for carrying out such project, and shall advertise for bids for all work which it desires to have done by contract, such advertisements to be published once a week for two consecutive weeks in a newspaper of general circulation in the political subdivision in which the project is to be developed. The contract shall be awarded to the lowest and best bidder."

█ The trial court concluded, as a matter of law, that the above documents informed appellant that the approval of the bid and award of the contract to appellant would not constitute acceptance of the contract until a formal written contract was executed. We agree. Under either R.C. 153.12 or 3735.36, it is clear that appellee cannot bind itself until a formal written contract is executed. Thus, the trial court correctly concluded that no contract existed between the parties as a matter of law.

Accordingly, appellant's sole assignment of error is found not well taken.

Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the court costs incurred on this appeal.

*Judgment affirmed.*

GLASSER, P.J., HANDWORK and SHERCK, JJ., concur.