PRIME CONTRACTORS, INC., Appellant,

v.

CITY OF GIRARD, Appellee.

[Cite as *Prime Contractors, Inc. v. Girard* (1995), 101 Ohio App.3d 249.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 93–T–5002.

Decided Feb. 17, 1995.

*Barry J. Miller,* for appellant.

*Richards & Meola* and *Charles L. Richards,* for appellee.

CHRISTLEY, Presiding Judge.

This appeal has been taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Prime Contractors, Inc., seeks the reversal of the court's denial of its request to permanently enjoin appellee, the city of Girard, from entering into a public works contract with Gennaro Pavers.

Appellee is a municipality located in Trumbull County, Ohio. In late 1992, city officials determined that a stretch of road within its jurisdiction, approximately one mile in length, needed to be repaved. Upon receiving financing from the Ohio Public Works Commission, appellee hired a consultant to prepare the bidding proposal for the project. This proposal was completed in July 1993.

In addition to setting forth the requirements of the project, the bidding proposal contained certain provisions governing the bidding process. One of these provisions stated that appellee reserved the right to investigate a bidder and determine whether the bidder had the ability to perform the work at the stated price. This provision further stated that appellee had the right to reject a bid on this basis.

The bidding proposal also contained a provision which indicated that in submitting its bid, a bidder had to attach materials showing that it had complied with the state's equal employment opportunity requirements. As part of these materials, a bidder was required to attach a copy of a valid Certificate of Compliance issued by the State Equal Employment Opportunity Coordinator. This provision also indicated that the failure to meet these requirements could cause the bid to be rejected.

After publishing an advertisement for bids in a local newspaper, appellee received three bids on the project. Of the three, appellant's bid of $96,816.75 was the lowest. The second lowest bid was Gennaro Pavers' bid of $124,854.80. The third bid was for approximately $130,000.

In trying to comply with the proposal provision concerning the equal employment opportunity requirements, appellant attached a copy of a Conditional Certificate of Compliance to its bid. However, this certificate indicated that it had expired on September 6, 1993, approximately two weeks before appellant submitted its bid on the project.

On October 12, 1993, appellee's city council met to determine which of the bids should be accepted. Prior to voting, the council heard statements from the city's law director and safety service director concerning the results of their "investigation" of appellant. Both directors stated that, in their opinion, the amount of appellant's bid was not sufficient to complete the project in the proper manner. Based upon these statements, the council passed an ordinance authorizing the safety service director to award the contract to Gennaro Pavers.

Approximately one month following the passage of the ordinance, appellant filed the instant action. In its original complaint, appellant alleged that appellee had abused its discretion in not awarding the contract without conducting a complete investigation into whether the company had the ability to perform the work in the proper manner. In its amended complaint, appellant further alleged that after awarding the contract to Gennaro Pavers, appellee had failed to comply with certain statutory requirements concerning the execution of the contract.

For relief, appellant sought a declaratory judgment stating that its bid should have been accepted because it had been the "lowest and best." Appellant further

sought injunctive relief enjoining appellee from awarding the contract to any company other than appellant.

A two-day bench trial was held on appellant's amended complaint. As a part of this proceeding, evidence was presented indicating that the opinion of the law director and the safety service director was based in part upon the fact that appellant's bid had been substantially lower than the estimate which had been provided to the city by its consultant. The evidence also indicated that the opinion was based upon information concerning the quality of work appellant had done in a project for a nearby township. In addition, the evidence established that appellant's bid had been rejected because appellant's Certificate of Compliance had expired.

Based upon the foregoing evidence, the trial court concluded that appellee had not abused its discretion in rejecting appellant's bid and awarding the contract to Gennaro Pavers. The court further held that appellant's bid had properly been rejected on the basis that it had failed to satisfy the proposal provision concerning the filing of a valid equal employment opportunity certificate. In addition, in relation to appellee's alleged failure to comply with certain statutory requirements in executing a contract with Gennaro Pavers, the court essentially concluded that any violation of the requirements was not a basis for granting appellant the requested relief. Based upon this analysis, the court entered judgment in favor of appellee as to appellant's entire complaint.

In appealing from this judgment, appellant has raised four assignments of error for review:

"The trial court erred in failing to declare the alleged contract between the City of Girard and Gennaro Pavers, Inc. void for violation of R.C. 735.05 and 153.12.

"The trial court erred in failing to declare the alleged contract between the City of Girard and Gennaro Pavers, Inc. void for violation of R.C. 5705.41.

"The trial court erred in failing to declare that the City of Girard's acceptance of Gennaro Pavers' bid as 'lowest and best' was an arbitrary and capricious abuse of discretion.

"The trial court abused its discretion in finding that Prime Contractors, Inc.'s failure to attach a current Equal Employment Opportunity (EEO) Certificate of Compliance was a material omission from its bid submission which rendered Prime an unqualified bidder under the EEO requirements of bid solicitation."

In addition to responding to the foregoing assignments, appellee has advanced two cross-assignments:

"The trial court erred in applying R.C. 153.12 to the award of a contract for a road resurfacing project by a municipal corporation through the competitive bidding process.

"The trial court erred in failing to apply the doctrine of laches to preclude the equitable relief sought by appellant."

During the course of its case-in-chief, appellant presented evidence indicating that appellee and Gennaro Pavers had never entered into a written contract predicated upon the acceptance of that company's bid. As a result, appellant argued that Gennaro Pavers' bid should be declared void, and appellee should be required to reconduct the bidding process. In its judgment entry, the trial court essentially held that the failure to execute a written agreement would only be a basis to nullify if either appellee or Gennaro Pavers had objected. Under its first assignment, appellant submits that this aspect of the court's holding was erroneous.

In support of its contention that the bidding process had to be redone, appellant cited R.C. 153.12, which governs the award and execution of public works contracts. Section (A) of this statute states, in pertinent part:

"(A) With respect to award of any contract for the construction, reconstruction, improvement, enlargement, alteration, repair, painting, or decoration of a public improvement made by the state, or any county, township, municipal corporation, school district, or other political subdivision, or any public board, commission, authority, instrumentality, or special purpose district of or in the state or a political subdivision or that is authorized by state law, the award, and execution of the contract, shall be made within sixty days after the date on which the bids are opened. The failure to award and execute the contract within sixty days invalidates the entire bid proceedings and all bids submitted, unless the time for awarding and executing the contract is extended by mutual consent of the owner or its representatives and the bidder whose bid the owner accepts and with respect to whom the owner subsequently awards and executes a contract."

In responding to appellant's argument at trial, appellee asserted that the foregoing provision was not applicable to a contract awarded by a municipal corporation. In support of this assertion, appellee emphasized that R.C. 153.12 was not contained in the chapter of the Ohio Revised Code which specifically dealt with public contracts made by a municipal corporation. See R.C. 735.05 *et seq.* Appellee also noted that R.C. 735.05 was similar to R.C. 153.12 in that the former also provided that a contract had to be in writing; however, R.C. 735.05 did not have the sixty-day requirement.

■ As to this point, this court would note that even though R.C. 153.12 is contained in a chapter of the Ohio Revised Code which pertains to public

improvements in general, the statute expressly states that it is applicable to municipal corporations. We would further note that although the subject matter of the statutes is similar, they do not conflict in any manner. Thus, since the wording of the statutes supports the inference that the legislature intended for both to be applicable to a municipal corporation, the trial court did not err in holding that R.C. 153.12 was applicable to the facts of this case.

In the alternative, appellee maintained that Gennaro Pavers' bid was still viable because the company and appellee had, in fact, entered into a written contract as to the project. Specifically, appellee stated that Gennaro Pavers' bid and the subsequent acceptance of that bid constituted a contract sufficient to satisfy the requirements of R.C. 153.12. In essence, appellee argued that the agreement did not have to be set forth in one document to satisfy the statute.

In interpreting R.C. 153.12, though, at least one appellate district has expressly rejected the foregoing argument. In *MacKinnon–Parker, Inc. v. Lucas Metro. Hous. Auth.* (1992), 84 Ohio App.3d 453, 616 N.E.2d 1204, the plaintiff-contractor submitted a bid to perform certain construction work in a housing project. Once this bid was determined to be the lowest, the defendant sent a "Notice of Contract Award" to the plaintiff. Yet, before a formal agreement could be executed, the defendant notified the plaintiff that a new bidding process would be held because a federal agency had not approved the work. The plaintiff then brought suit against the defendant, asserting claims of misrepresentation and breach of contract.

In affirming the granting of summary judgment in favor of the defendant as to the breach of contract claim, the Eighth Appellate District held that in this type of situation, the sending of the award notice had not been sufficient to bind the parties:

"In *Commr. of Highland Cty. v. Rhoades* (1875), 26 Ohio St. 411, the Ohio Supreme Court held that a contract is formed when a party inviting construction bids accepts a proposed bid and gives notice of the acceptance of the bid to the bidder. * * * The only purpose of a later agreement to execute a formal written contract is to evidence the contract entered into. * * * Thus, the bidder may rightfully reject a formal written contract which modified the terms of the original contract. * * * This rule is not applicable, however, where it is understood that the acceptance of the bid and execution of a formal written contract are both conditions to the formation of a contract between the parties. *Hughes v. Clyde* (1884), 41 Ohio St. 339, 340 * * *. This two-part acceptance of the contract may be imposed by the invitation to accept the bids or by virtue of the fact that the party seeking the bid is authorized by statute to contract only under certain circumstances, *i.e.*, by a formal written contract. * * *." (Citations omitted.) *Id.*, 84 Ohio App.3d at 455–456, 616 N.E.2d at 1205–1206.

In applying this standard to the facts in that case, the *MacKinnon–Parker* court noted that not only did certain provisions in the bid documents require the execution of a formal written document, but that such a requirement was likewise imposed under R.C. 153.12. Thus, since this requirement had not been met, a contract never existed between the parties.

A review of the bid proposal in this case indicates that in submitting its bid on the project, appellant was required to execute a document that was captioned "Contract Guarantee." This document provided that appellant had agreed to execute a contract within ten days of receiving notice that the project had been awarded to it. Other provisions in the bid proposal also referred to this requirement.

■ Although the "Contract Guarantee" document did not expressly refer to a written contract, it did indicate that mere notification of the award was not sufficient to bind appellee, *i.e.*, the document indicated that the agreement between the parties was conditioned upon the execution of a separate contract. Moreover, it is arguable that the requirement that this contract be in writing could be inferred from the mere fact that a separate contract was required, *i.e.*, since the bid itself is already in writing, the requirement of a separate contract would be superfluous unless the separate contract also had to be in writing.

Yet, even if the "Contract Guarantee" document was ambiguous as to the writing requirement, such a requirement is clearly imposed under R.C. 153.12. As was noted above, the *MacKinnon–Parker* court held that the two-step acceptance of a contract can be imposed by the terms of the bid *or* by statute. R.C. 153.12 not only provides that a separate contract must be executed within sixty days after the date the bids are opened, but further provides that this contract must be in writing. Thus, the mere fact that appellee gave notice of the award to Gennaro Pavers was not sufficient to satisfy the statutory requirements.

Nevertheless, this court would again note that R.C. 153.12 states that the sixty-day limit can be extended by the "mutual consent" of the parties. In its judgment entry, the trial court specifically quoted this aspect of the statute. However, in concluding that the bid had not been rendered invalid, the court did not expressly hold that appellee and Gennaro Pavers had consented to an extension; instead, the court simply stated that the authority to invalidate the bid was operative only between the parties to the proposed contract. For the following reasons, we find that the court's interpretation of R.C. 153.12 is correct.

■ As to this point, we would emphasize that R.C. 153.12 does not provide that the parties to the proposed contract must "agree" to extend the sixty-day period. Stated differently, the statute does not infer that there must be an express declaration of intent in order for the time to be extended. Instead, the

statute states that the time can be extended by mutual consent. Such mutual consent can be reasonably inferred from conduct.

■ The use of the word "consent" supports the inference that the General Assembly intended for each party to have the right to invalidate the bid at its option once the sixty-day period has ended. Under this interpretation, the bid does not automatically become invalid at the conclusion of the sixty-day period, but it continues to be valid until one party indicates to the other that it is withdrawing its consent to any further extension of the time. Thus, the right to invalidate a bid can be exercised only by one in privity to the proposed contract.

■ In this case, there was no evidence presented that indicated that either appellee or Gennaro Pavers had revoked their consent to extending the sixty-day period. In fact, the evidence shows that Gennaro Pavers had begun to perform the work on the project even though a written contract had not been executed. Thus, since Gennaro Pavers' bid was still valid under R.C. 153.12, appellant's first assignment is not well taken.

During the course of the trial, appellant presented some evidence indicating that appellee's fiscal officer had not issued a certificate warranting that sufficient funds had been appropriated to cover the cost of the alleged contract. Based upon this, appellant argued at the close of the evidence that any contract between appellee and Gennaro Pavers should be declared invalid because appellee had failed to satisfy the requirements of R.C. 5705.41(D). Under its second assignment, appellant contends that the trial court erred in rejecting this argument.

R.C. 5705.41 sets forth certain restrictions on the appropriation and expenditure of funds by a taxing unit. Subsection (D) of this statute provides that a taxing unit cannot enter into a contract unless a certificate from the fiscal officer is attached to the contract. The subsection further states that the certificate must indicate that the funds needed to satisfy the contract have been appropriated and are in the treasury.

■ As to this point, this court would note that as of the date of the trial court's judgment entry, appellee and Gennaro Pavers had not executed a contract as to the project. Thus, appellee had not violated R.C. 5705.41(D) because the issuance of the certificate was not necessary at that point. Accordingly, this assignment is also without merit.

Under its next assignment, appellant challenges the propriety of the primary basis for appellee's rejection of its bid. Appellant submits that the trial court erred in essentially upholding appellee's decision because the evidence demonstrated that appellee abused its discretion in making that decision. Specifically, appellant maintains that the decision should be reversed because it was predicated upon nonspecified criteria.

R.C. 735.05 provides that a municipal corporation has the authority to award a contract based upon its determination of which bid is the lowest and the best. Under this standard, a municipal corporation is not automatically required to award the contract to the company with the lowest bid; instead, it is allowed to engage in a qualitative analysis as to which bid is better.

Given the nature of this standard, a municipal corporation is given considerable latitude in making its decision. *Kokosing Constr. Co. v. Dixon* (1991), 72 Ohio App.3d 320, 325, 594 N.E.2d 675, 677–678. As a result, that decision will only be reversed when the evidence indicates that the municipal corporation abused its discretion. *Campbell Constr. Co. v. Ravenna* (Dec. 9, 1994), Portage App. No. 93–P–0044, unreported, at 9, 1994 WL 721870. Such an abuse has taken place if the decision was arbitrary, unreasonable or unconscionable. *Id.*

In applying this standard, the Supreme Court of Ohio has held that a city abuses its discretion when it bases its decision upon nebulous or nonexistent criteria. *Dayton ex rel. Scandrick v. McGee* (1981), 67 Ohio St.2d 356, 21 O.O.3d 225, 423 N.E.2d 1095. However, the opposite is also true; an abuse of discretion has not occurred if the decision is based upon criteria expressly set forth in the bidding proposal. *Kokosing Constr.*, 72 Ohio App.3d at 327, 594 N.E.2d at 679.

In this case, appellee's rejection of appellant's bid was based upon two conclusions: (1) appellant could not perform the work in a proper manner at the proposed bid, and (2) appellant did not have a reputation for doing good work. Our review of the bid proposal indicates that it contained a provision which stated that appellee reserved the right to reject a bid for these reasons. Thus, appellee's decision was not based upon a nonspecified criterion.

In addition, our review of the trial transcript indicates that these conclusions were supported by the evidence. As to the first conclusion, the evidence showed that appellant's bid was substantially lower than the estimate provided to appellee by its consultant. Moreover, appellee's law director was told by a separate consultant that the lowness of appellant's bid could not be based entirely upon the fact that it would be receiving its supplies from a source located near the construction site.

As to the second conclusion, the evidence indicates that shortly after appellant's bid had been submitted, appellee's law director became aware that certain officials in a neighboring township had not been impressed by the work appellant had performed in another project. The evidence further indicates that the law director was aware that appellant was a party in a number of lawsuits at that time.

Furthermore, this court would note that appellee's decision was also based upon its prior knowledge of the quality of work which Gennaro Pavers performed.

In *Campbell Constr.*, we held that previous dealings with a company can be considered by a municipal corporation in awarding a public works contract.

As part of this assignment, appellant also contends that the nature of appellee's investigation of its background shows that appellee acted in bad faith. As to this point, we would emphasize that there was no evidence indicating that appellee's various officials were predisposed to reject appellant's bid. Moreover, there was no provision in the bidding proposal which required appellees to conduct a further investigation. The fact that the investigation results proved to be faulty or incomplete does not, of itself, void the results absent the showing of "bad faith." To the contrary, the testimony of the various parties indicates they believed their conclusions at the time they were made.

Since appellee's decision was based upon the criteria set forth in the bid proposal, it did not abuse its discretion in rejecting appellant's bid. Thus, the third assignment of this appeal is not well taken.

As was noted above, appellee's decision to reject appellant's bid was also based upon the fact that appellant attached to its bid a copy of an invalid Certificate of Compliance issued by the State Equal Employment Opportunity Coordinator. Under its fourth and final assignment, appellant contends that the trial court erred in upholding this aspect of appellee's decision. Essentially, appellant asserts that appellee abused its discretion in basing its decision on this ground because the failure to attach a copy of a valid certificate constituted an immaterial breach of the bid proposal.

In support of this argument, appellant cites *Julian Speer Co. v. Ohio Dept. of Adm. Serv.* (Apr. 23, 1991), Franklin C.P. No. 91CVH03–2117, unreported. In that case, the bidder failed to attach a copy of a valid certificate to its bid, even though it had already obtained the actual certificate prior to submitting the bid. Before the award was made, though, the bidder submitted the required copy to the state making the award. Nevertheless, the bid was rejected on this basis.

The bidder then brought an action for injunctive relief in the common pleas court. Concluding that the bidder had substantially complied with the requirements of the bid proposal, the court held that the failure to attach the required copy constituted a technical error which did not affect the validity of the bid. In reaching this holding, the court stated that the rejection of the bid on this basis would be elevating "form over substance." *Id.* at 2.

Without commenting upon the merits of the *Speer* decision, this court would note that the facts of the instant case are readily distinguishable. In *Speer*, the bidder had taken the necessary steps to obtain a valid certificate prior to preparing its bid, and then took steps to remedy the situation once it realized that it had accidentally failed to attach the required copy. In contrast, the evidence in

this case indicates that although appellant took steps to obtain a valid certificate once it had realized its old certificate had expired, it still submitted a copy of the invalid certificate with its bid. Moreover, appellant submitted this copy without including an explanation as to why an invalid copy was being submitted.

Appellant contends that if appellee had had any questions about the certificate, it could have asked the company to clarify the situation. However, given that a valid certificate was a prerequisite to obtaining the award, the burden was on appellant to explain to appellee why a copy of an invalid certificate was submitted.

A provision in the bid proposal specifically stated that the failure to attach a copy of a valid certificate was sufficient grounds for rejecting the bid. Given the nature of this provision, appellant's failure to submit an explanation was a material breach of the terms of the proposal. Thus, since appellee did not abuse its discretion in rejecting the bid on this basis, appellant's fourth assignment is without merit.

As part of its appellate brief, appellee has raised two cross-assignments of error for consideration. However, based upon our discussion of appellant's four assignments, the merits of the cross-assignments have been rendered moot. Thus, pursuant to App.R. 12(A)(1)(c), it is not necessary for this court to address these assignments.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY and NADER, JJ., concur.