REIN CONSTRUCTION COMPANY, Appellee and Cross–Appellant,

v.

TRUMBULL COUNTY BOARD OF COMMISSIONERS et al., Appellants and Cross–Appellees; Carson, Appellee.

[Cite as *Rein Constr. Co. v. Trumbull Cty. Bd. of Commrs.* (2000), 138 Ohio App.3d 622.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 98–T–0210.

Decided Sept. 11, 2000.

*Harrington, Hoppe & Mitchell, Ltd.*, and *Alan D. Wenger*, for appellee and cross-appellant.

*Dennis Watkins*, Trumbull County Prosecuting Attorney, and *James J. Misocky*, Assistant Prosecuting Attorney, for appellants and cross-appellees, Board of Trumbull County Commissioners.

*Comstock, Springer & Wilson, L.P.A.*, and *W. Scott Fowler*, for appellants and cross-appellees, K–Y Development Corporation.

*Ambrosy & Fredericka and James A. Fredericka*, for appellee, Anthony J. Carson.

---

*Per Curiam.*

This appeal and cross-appeal are taken from a final judgment of the Trumbull County Court of Common Pleas. Appellants/cross-appellees, K–Y Development Corporation ("K–Y Development") and the Trumbull County Board of Commissioners ("the board"), appeal the trial court's decision declaring the bid solicitation for the Trumbull County Eastern District Court ("Eastern District Court") improper. Appellee/cross-appellant, Rein Construction Company ("Rein"), appeals the trial court's judgment finding the bid solicitation for the Trumbull County Central District Court ("Central District Court") proper. Rein also appeals the court's subsequent denial of its request to permanently enjoin appellee, Anthony J. Carson ("Carson"), from performing its lease agreement with the board.

The following facts are relevant to this appeal. In the summer of 1998, the board prepared a nine-page request for proposals ("RFP") for awarding separate public contracts for the leasing of office space for the Eastern and Central District Courts. Once completed, the board then advertised for sealed bids in a local newspaper from August 25, 1998 to September 15, 1998.

In addition to setting forth the requirements of each project, the RFP indicated the process by which all bids would be received and opened, as well as the process by which they could be withdrawn by a bidder. In addition, the board reserved the right to reject any and all bids, and to waive any informalities or technicalities in the bidding process. To be considered for the projects, bids had to be filed with the clerk by 2:00 p.m. September 24, 1998.

Several bids for each court were received by the deadline, including proposals from K–Y Development, Carson, and Rein. The board held a public meeting on September 24, 1998, at which time the bids that had been timely submitted were opened and reviewed.

Afterwards, each of the commissioners separately visited the proposed sites and examined their locations. After subsequent deliberation, the board adopted a resolution awarding the bid for the Eastern District Court to K–Y Development. The board awarded the Central District project to Carson. These decisions were announced at a public meeting on October 1, 1998, and leases were signed on October 7, 1998.

The next day, October 8, 1998, Rein filed an action regarding both bids in the Trumbull County Court of Common Pleas, seeking both declaratory and injunctive relief, as well as the issuance of a writ of mandamus. In its complaint, Rein alleged that the bids submitted by K–Y Development and Carson did not comply with the specifications set out in the RFP, and that the board unlawfully awarded lease agreements to K–Y Development and Carson based on those invalid bids. Accordingly, Rein asked the trial court to declare that the board acted unlawfully and abused its discretion in awarding the leases to K–Y Development and Carson. It further asked the court to issue a preliminary and permanent injunction prohibiting K–Y Development and Carson from fulfilling their obligations under the respective leases. In addition, Rein also sought a writ of mandamus ordering the board to award Rein both projects because the company had submitted the "lowest and best" bid.

A two-day bench trial was held on November 4 and 5, 1998. As part of the proceedings, evidence was introduced showing that on the day the bids were due, K–Y Development had sent a fax to the board clarifying that its bid for the Eastern District Court also included the cost of janitorial services, despite the fact that the RFP had stated that the county would be responsible for those expenses. The evidence also showed that the fax was not received until after all of the bids had been opened, and that no other contractor had included the cost of janitorial services in its bid. In addition, the evidence established that the eventual lease agreement signed by K–Y Development and the board provided that K–Y Development would, indeed, be obligated to provide janitorial services at its expense.

When asked about the fax, all three commissioners testified that it played no part in their determination that K–Y Development's proposal represented the lowest and best bid for the Eastern District Court. Instead, the commissioners testified that the primary reason K–Y Development's bid was chosen over Rein's was the accessibility, visibility, and convenience of location that the site presented for the public.

As for the Central District project, Rein argued that Carson's bid contained numerous material, nonwaivable defects. Most important for purposes of this appeal was the allegation that Carson could not supply the required fifty parking places in accordance with the RFP. In response, Carson testified that he had

mutual easements with a neighboring landowner that would permit the parking spaces to be used by the court. The evidence also showed that the board chose Carson's bid over Rein's, even though they were identical as far as cost, primarily because of its location and accessibility to the public.

Based on the foregoing evidence, the trial court concluded that the board abused its discretion in awarding the lease for the Eastern District Court to K–Y Development. According to the trial court, offering a benefit beyond that required by the RFP represented an effort to seek an advantage over other bidders that destroyed the competitive character of the proceedings. The trial court further concluded that, while the board reserved the right to waive informalities in the bidding, the board had no discretion to waive noncompliance with a specification where doing so would affect the amounts of the bids and give one bidder a competitive advantage over another.

With respect to the Central District project, the trial court concluded that there was no merit to any of Rein's allegations. In particular, the trial court found that there was no evidence that the board waived, or intended to waive, the parking space requirement in the bid and lease agreement and, in fact, Carson had signed a lease with the board obligating him to provide the fifty required parking spaces.

In accordance with its findings, the trial court concluded that the lease for the Eastern District Court between the board and K–Y Development was unlawful and void as a matter of law. As a result, the trial court enjoined both K–Y Development and the board from taking any action in furtherance of their lease. However, the trial court rejected Rein's request for a writ of mandamus, holding that "where a board of public officers is given statutory authority to award a public contract to the 'lowest and best' bidder, the board's discretion cannot be controlled by mandamus." All other relief sought by Rein was also denied.

K–Y Development filed a timely notice of appeal, and now asserts the following assignments of error for our review:

"[1.] The trial court erred by finding that the Board of Trumbull County Commissioners abused its discretion by awarding the bid for the Eastern District Court facility to defendant-appellant K–Y Development Corporation and by finding that the lease agreement entered into between K–Y Development Corporation and the Board of Trumbull County Commissioners was unlawful and void.

"[2.] The trial court erred by finding that plaintiff-appellee Rein Construction was entitled to declaratory and injunctive relief."

The board also filed a timely notice of appeal of the trial court's decision raising the following assignments of error:

"[1.] The Trial Court erred in denying the Board of County Commissioners the discretion to determine the lowest and best bids in the award of a lease for space for a public courtroom to house the County Court.

"[2.] The finding of the Trial Court that the Board of Commissioners improperly considered matters outside of the bid documents is against the manifest weight of the evidence and must be reversed.

"[3.] The Trial Court erred in granting injunctive relief where a lease had already been awarded and executed and Appellee and Cross–Appellant failed to establish all requisite elements for injunctive relief by clear and convincing evidence."

Finally, Rein has filed a cross-appeal from the trial court's judgment, and presents one assignment of error:

"The Trial Court committed reversible error as a matter of law by failing to find the bid of Anthony J. Carson, Jr. for Central District Court facilities void and unlawful by reason of its failure to comply with material provisions of the bid specifications."

Although the above facts apply to both projects, for purposes of discussion, we will consider the proposals separately.

## EASTERN DISTRICT COURT

All of the arguments raised by K–Y Development and the board concern the trial court's conclusion that the lease entered into between the two parties was void. As a result, we will address their respective assignments of error in a consolidated fashion.

First, K–Y Development and the board argue that the commissioners did not abuse their discretion with respect to their review of the bids or to how they reached the conclusion that K–Y Development presented the "lowest and best" bid. Both claim that K–Y Development did not receive an unfair advantage by sending the fax after the bids had already been opened because the fax played no role in the board's decision. Instead, the parties maintain that the commissioners properly looked at the expense, location, and the general layout of both plans before accepting K–Y Development's bid.

Under Ohio's competitive bidding statute, public agencies are required to award a public contract to the "lowest and best" bidder. R.C. 307.86. The intent of competitive bidding is " 'to provide for open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms.' " *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202, 204, quoting

*Chillicothe Bd. of Edn. v. Sever–Williams Co.* (1970), 22 Ohio St.2d 107, 115, 51 O.O.2d 173, 177–178, 258 N.E.2d 605, 610. See, also, *Hardrives Paving & Constr., Inc. v. Niles* (1994), 99 Ohio App.3d 243, 247, 650 N.E.2d 482, 484–485.

■ Under this standard, however, a public agency is not automatically required to award a public contract to the company with the lowest dollar bid; instead, it is allowed to engage in a qualitative analysis as to which bid is better. *Prime Contractors v. Girard* (1995), 101 Ohio App.3d 249, 258, 655 N.E.2d 411, 416–417; *Hardrives*, 99 Ohio App.3d at 246, 650 N.E.2d at 483–484.

■ Given the inherent nature of this standard, a public agency making such a determination is given considerable latitude. As a result, in reviewing whether a public agency has properly awarded a contract, the trial court must determine whether the agency has abused its discretion. *Geneva Disposal Co. v. Geneva* (Aug. 30, 1996), Ashtabula App. No. 95–A–0053, unreported, at 4, 1996 WL 535282. The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the decision-making body. *Cedar Bay* at 22, 552 N.E.2d at 205. Furthermore, the Supreme Court of Ohio has held:

■ "Generally, courts in this state should be reluctant to substitute their judgment for that of [government] officials in determining which party is the 'lowest and best bidder.' 'The rule is generally accepted that, in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner. All legal intendments are in favor of the administrative action.' " *Id.* at 21, 552 N.E.2d at 204, quoting *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590, 50 O.O. 465, 469, 113 N.E.2d 14, 19.

Here, the evidence established that K–Y Development faxed the board a letter stating that its bid included the cost of janitorial services. According to K–Y Development's bookkeeper, who was present at the bid opening, the letter was sent because K–Y Development's bid was higher than the lowest bid, and after looking over its proposal, it was determined that the difference in cost was the result of the mistaken inclusion of janitorial services in the bid. K–Y Development readily admits that the RFP clearly stated that the county would be responsible for the cost of janitorial services, and that no other bidder included those costs in its bid.

■ The trial court found that the clarification letter was a substantial and material deviation which destroyed the competitive nature of the bidding process. After a thorough review of the record, we agree. The purpose of competitive

bidding is to provide a fair and honest process for the awarding of public contracts. Allowing one party to amend or change its bid after all proposals have been formally opened endangers the sanctity of the sealed bid process. *Sever-Williams* at paragraph three of the syllabus ("The possible abuses of amending or changing bids after a formal opening of sealed bids, or of favoring one bidder over another, endangers the sanctity of sealed bids.").

The real issue in this genre of cases goes beyond the specific merits of each bid. Instead the issue is one of public policy. Will the public's perception of the bidding process be positive or negative? No amount of post-bidding explanation regarding the harmlessness of the deviation will cure the appearance of some sort of impropriety.

This court is in no way implying that either K–Y Development or the board acted in bad faith with respect to the awarding of the Eastern District Court project. Nor are we suggesting that K–Y Development was trying to thwart the competitive bidding process by amending its original proposal. Rather, we are concerned with the fact that the letter was sent and received after all bids had been opened. Whether or not the letter affected the choice of bids, the fact that the letter was even sent gives pause for concern, especially in light of the fact that the eventual lease agreement did provide that K–Y Development would be responsible for janitorial services.

There is no question, however, that the fax represented a deviation from the RFP and that the deviation offered a benefit beyond what was required in the bid specifications. As noted by the trial court, "[i]t would be contrary to [the] purpose [of competitive bidding] to permit one bidder to offer benefits and advantages beyond those required by the specifications in the hope that, if challenged, their bids will still be upheld as the lowest and best based on other criteria." Accordingly, we are compelled to uphold the trial court's decision that the board abused its discretion in awarding the contract to K–Y Development based on a substantial variation. K–Y Development's first assignment of error, along with the board's first and second assignments of error lack merit.

Having said that, the next issue is whether or not the trial court erred in granting injunctive relief when a lease had already been awarded and executed by K–Y Development and the board. When considering an application for injunctive relief, the following guidelines, although not mandatory, are appropriate for a court to consider: (1) the likelihood of the plaintiff's ·success on the merits, (2) whether there exists an adequate remedy at law, (3) whether the injunction would prevent irreparable harm, (4) a balancing of the potential injury to the defendant and the general public, and (5) whether the injunctive relief sought is for the purpose of maintaining the *status quo* pending a trial on the

merits. *Hardrives Paving & Constr., Inc. v. Mecca Twp. Bd. of Trustees* (Sept. 30, 1999), Trumbull App. No. 98–T–0192, unreported, at 6, 1999 WL 959864.

In addition, " 'to prevail on a complaint seeking injunctive relief with respect to the award of a public contract,' the unsuccessful bidder 'must prove by clear and convincing evidence that the award constituted an abuse of discretion and resulted in some tangible harm to the public in general,' or to the bidder." *Id.* at 10, quoting *Cleveland Constr., Inc. v. Ohio Dept. of Adm. Serv., Gen. Serv. Adm.* (1997), 121 Ohio App.3d 372, 384, 700 N.E.2d 54, 62.

However, whether to grant or deny an injunction is a matter solely within the discretion of the trial court, and this court will not disturb the trial court's judgment in the absence of an abuse of discretion. *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt.* (1995), 73 Ohio St.3d 590, 653 N.E.2d 646, paragraph three of the syllabus.

The trial court found that Rein was entitled to injunctive relief because the lease between K–Y Development and the board was invalid due to the material deviation from the bid specifications which destroyed the competitive nature of the bidding process. In reaching its decision, the trial court concluded that, while delays in a public project may be undesirable, that potential harm does not outweigh the harm suffered by the public generally when public contracts are unlawfully awarded.

K–Y Development, however, maintains that Rein was not entitled to injunctive relief because doing so would cause irreparable injury to K–Y Development, exceeding any injury suffered by Rein. In support, K–Y Development argues that Rein failed to introduce any evidence relating to any injury it would sustain if the injunction was denied, while K–Y Development had already expended approximately $120,000 in preparing for the lease.

Furthermore, K–Y Development believes that Rein failed to establish that it would have been awarded the contract if K–Y Development had not received it, and that serious harm would result to the public due to the dilapidated condition of the then current Eastern District courthouse. Finally, K–Y Development submits that an injunction should not have been granted because Rein failed to timely object to K–Y Development's bid, and because K–Y Development had changed its position in reliance on the lease.

After reviewing the record, we conclude that the trial court did not abuse its discretion in granting Rein the injunction. Rein has established, by clear and convincing evidence, that the awarding of the contract to K–Y Development constituted an abuse of discretion. In addition, Rein has also shown that the public would be harmed if no injunction were granted because the lease between

K–Y Development and the board was unlawful and invalid because of the bidding irregularities.

Contrary to K–Y Development and the board's assertions, Rein was not required to show that it would also suffer damage. Harm to the public in general is sufficient to support the granting of injunctive relief in a case such as the one at bar. As a result, K–Y Development's second assignment of error, and the board's third assignment of error lacks merit.

## CENTRAL DISTRICT COURT

We will now address Rein's single cross-assignment of error. At trial, Rein argued that Carson's bid was defective as a result of several material defects in the proposal. For purposes of appeal, however, Rein has concentrated on only one, the alleged failure by Carson to have the required minimum of fifty parking spaces available for use by the court staff and public.

The RFP required a minimum of fifty standard parking spaces to be available for use by the court. According to Rein, Carson's proposal lacked the required number of spaces, and, as a result, he had a competitive advantage over the other bidders who could genuinely offer the necessary parking. Rein maintains that although Carson testified that he had a "mutual understanding" with his neighbor regarding the use of the parking around the proposed building, he offered no written evidence in support, and, without such proof, his bid did not conform to the RFP.

The trial court discounted Rein's arguments and concluded that Carson was not given any competitive advantage unavailable to the other bidders. This decision was based in part on Carson's testimony that related to the mutual easements he had with his neighbor. According to this testimony, these easements would permit the parking spaces to be used by the court. In addition, Carson denied that any of the spaces shown on his proposal were unavailable, and, in fact, at least fifty spaces were in existence at the time the bid was complete, and that they had been used by a prior business in the proposed building. Rein did not introduce any evidence to the contrary.

In deference to the discretion afforded the board in making this decision, we conclude that the board's decision was neither unreasonable nor arbitrary. There is no evidence that Carson was unable to provide the necessary parking spaces. In fact, Carson's proposal contained a site layout showing where each space would be located. He even testified that more space might become available at a later time. More importantly, nothing in the RFP required Carson to own the proposed spaces, or to document he had exclusive use of those fifty spaces.

All bids, by their very nature are proposals—things that will be done in the future. Once the bid was accepted, the board and Carson were contractually bound to respectively demand and provide fifty parking spaces. That is no different than a bidder asserting that he or she will build a certain building for "X" amount of dollars. Thus, Rein's sole cross-assignment of error is without merit.

Based on the foregoing analysis, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., WILLIAM M. O'NEILL and MILLIGAN, JJ., concur.

JOHN R. MILLIGAN, Jr., J., retired, of the Fifth Appellate District, sitting by assignment.