OPINION
{¶ 1} The plaintiff-appellant, United Brotherhood of Carpenters and Joiners, Local Union No. 1581 ("Union"), appeals the judgment of the Defiance County Common Pleas Court granting summary judgment in favor of the defendants-appellees, Beilharz Architects, Inc. ("Beilharz") and the Defiance County Board of Commissioners ("Commissioners"), and dismissing the case.
 {¶ 2} In 2002, the Commissioners purchased real estate known as the Key Bank Building. At that time, the bank was operating an office in a portion of the first floor, which it continued to lease from the Commissioners. In July 2002, the Commissioners contacted Jerry Overmier ("Overmier"), a principal architect at Beilharz, to prepare a feasibility study and estimate for renovations to the Key Bank Building. The proposed project entailed demolition and renovation of the basement and first floor of the building to provide new offices for the county engineer and his staff. Overmier presented his estimate and preliminary drawings to the Commissioners, who abandoned the project due to the estimated expense.
 {¶ 3} In December 2002, the Commissioners contacted Overmier to address moisture problems in the basement of the Key Bank Building. Using the estimate previously prepared for the abandoned renovation project, Overmier extrapolated those expenses related to demolition and verbally estimated that the project would cost between $15,000 and $18,000. Overmier then sent requests for proposals to four contractors in Defiance County. Three contractors responded, and each proposal was less than the prevailing wage threshold of $18,764.[1] The Commissioners awarded the contract to D.C.S. Construction, who completed the project by the end of February 2003.
 {¶ 4} On April 29, 2003, the Union filed a complaint against Beilharz, the Commissioners, and D.C.S. Construction, alleging violations of the prevailing wage laws. Each defendant filed an answer. Based on answers to discovery requests, the Union dismissed D.C.S. Construction without prejudice and filed an amended complaint.[2] On January 26, 2004, the Union filed Overmier's two volume deposition with exhibits. The Commissioners filed an answer to the Union's amended complaint, and Beilharz filed an answer and counterclaim, to which the Union filed an answer. On March 31, 2004, the Union filed a motion for summary judgment. On April 29, 2004, the Commissioners filed a motion to dismiss, a motion for summary judgment, and a response to the Union's motion for summary judgment. Also on April 29, 2004, Beilharz filed a motion for summary judgment and Overmier's "affidavit."[3] The Union filed a reply brief, and on November 23, 2005, the trial court filed its opinion denying the Union's motion for summary judgment, granting summary judgment in favor of the Commissioners and Beilharz, and dismissing the case with prejudice.
 {¶ 5} As part of its November 23, 2005 judgment entry, the trial court noted that Beilharz had 30 days to request attorney's fees, and stated "[i]f such request is not made, the foregoing shall constitute a final appealable order." J. Entry, Nov. 23, 2005. The Union filed a notice of appeal on December 29, 2005, which we dismissed for lack of a final appealable order. On February 3, 2006, the trial court filed a judgment entry incorporating its November 23, 2005 opinion and dismissing the case. The Union appeals the trial court's decision and asserts the following assignments of error:
 The trial court committed reversible error when it refused to hold that the [Commissioners] and Beilharz violated R.C. 4115.04(A) and 4115.08 by failing to obtain prevailing wage determinations from the director of commerce prior to bidding.
 The trial court committed reversible error when it refused to give effect to the statutory standards under R.C. 4115.03(B) that the "total overall project cost" be "fairly estimated".
 The trial court committed reversible error when it refused to hold that O.A.C. 4101:9-4-17(A) requires the use of prevailing rates of wages in all pre-bid construction cost estimates.
 The trial court committed reversible error when it refused to hold that the [Commissioners] and Beilharz violated R.C. 4115.03(B) and O.A.C. 4101:9-4-17(A) by failing to "fairly estimate" the project cost using applicable prevailing rates of wages in the locality of the project.
 {¶ 6} A trial court's grant of summary judgment is reviewed de novo on appeal. Lorain Nat'l Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129, 572 N.E.2d 198. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law, and "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor." Civ. R. 56(C).
 {¶ 7} The moving party may file its motion for summary judgment "with or without supporting affidavits[.]" Civ. R. 56(A). However, "[a] party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. Once the moving party demonstrates it is entitled to summary judgment, the burden shifts to the non-moving party to show why summary judgment is inappropriate. See Civ. R. 56(E). If the non-movant fails to respond, or fails to support its response with evidence of the kind required by Civ. R. 56(C), the court may enter summary judgment in favor of the moving party. Id. Otherwise, summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the non-movant. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 360, 1992-Ohio-95, 604 N.E.2d 138.
 {¶ 8} In the first assignment of error, the Union contends that every public authority is statutorily required to contact the Ohio Department of Commerce to obtain the prevailing wage rate for its locality prior to advertising for bids, which the Commissioners and Beilharz failed to do. The Union contends that Overmier simply extrapolated line-item expenses from the estimate prepared for the abandoned renovation project before submitting an estimate to the Commissioners for the cost of demolition. The Union submits there is undisputed evidence in the record to prove the appellees' failure to obtain the prevailing wage rate.
 {¶ 9} In response, Appellees essentially contend that the prevailing wage law does not apply because the demolition project did not meet the statutory definition of "construction." Appellees argue the project was not "construction" because the estimated cost was less than $18,764.
 {¶ 10} The Union's original complaint alleged that Appellees had unlawfully sub-divided the renovation project in order avoid the prevailing wage law. A large portion of each brief is devoted to the same argument. However, the Union filed an amended complaint to exclude those allegations. Therefore, we will not address any of those arguments.
 {¶ 11} An "interested party" may file a cause of action against a "public authority" for violations of the prevailing wage law. R.C. 4115.16. The Commissioners are a "public authority" under R.C. 4115.03(A). Pursuant to R.C. 4115.08:
 [n]o public official, authorized to contract for or construct with the official's own forces a public improvement, shall fail, before advertising for bids or undertaking such construction with those forces, to have the director of commerce determine the prevailing rates of wages of mechanics and laborers for the class of work called for by the public improvement in the locality where the work is to be performed, as provided in section 4115.04 of the Revised Code.
Subject to the exceptions of subdivision (B), which are inapplicable to this case,
R.C. 4115.04(A) states:
 [e]very public authority authorized to contract for or construct with its own forces a public improvement, before advertising for bids or undertaking such construction with its own forces, shall have the director of commerce determine the prevailing rates of wages of mechanics and laborers in accordance with section 4115.05 of the Revised Code for the class of work called for by the public improvement, in the locality where the work is to be performed. Such schedule of wages shall be attached to and made part of the specifications for the work, and shall be printed on the bidding blanks where the work is done by contract. A copy of the bidding blank shall be filed with the director before such contract is awarded.
The term "construction" is defined as "[a]ny reconstruction, enlargement, alteration, repair, remodeling, renovation, or painting of any public improvement, the total overall project cost of which is fairly estimated to be more than [$18,764.]" R.C. 4115.03(B)(2). In this case, the facts are undisputed that the prevailing wage threshold was $18,764. Additionally, the Ohio Department of Commerce is charged with enforcing the prevailing wage law. Ohio Adm. Code 4101:9-4-17 states, "[t]he construction of a public improvement shall be `fairly estimated to be more than the threshold,' based on the prevailing wage rates in the locality at the time the project is to be let out for bidding[.]"
 {¶ 12} The central issues in this case are whether the demolition project met the statutory definition of "construction," and if so, whether the project was fairly estimated. Specifically, the Union alleges that Beilharz and the Commissioners had a statutory duty to fairly estimate the "total overall project cost", and that they violated R.C. 4115.04 and 4115.08 by failing to contact the department of commerce to ascertain the prevailing wage rate prior to demolition of the basement.
 {¶ 13} The parties do not argue, and there is no evidence in the record to show, that the Commissioners completed the demolition project with their own forces. Despite any arguments to the contrary, R.C. 4115.10(A)[4] is inapplicable to this case because the Commissioners did not complete the demolition project with their own forces. Furthermore, if we redact those inapplicable portions of R.C. 4115.04(A) and 4115.08 that pertains to construction performed by a public authority's own forces, we are left with the following language:
 [e]very public authority authorized to contract for * * * a public improvement, before advertising for bids * * * shall have the director of commerce determine the prevailing rates of wages of mechanics and laborers * * * in the locality where the work is to be performed[.]
 [n]o public official authorized to contract for * * * a public improvement, shall fail, before advertising for bids * * * to have the director of commerce determine the prevailing rates of wages of mechanics and laborers for the class of work called for by the public improvement in the locality where the work is to be performed, as provided in section 4115.04 of the Revised Code[.]
(Emphasis added). R.C. 4115.04(A); 4115.08.
 {¶ 14} If the General Assembly's intent can be ascertained from the plain meaning of a statute, and if the words are clear and unambiguous, a court may not resort to any other rules of interpretation or construction. State v. Hairston, 101 Ohio St.3d 308, 2004-Ohio-969,804 N.E.2d 471 at ¶ 12 (quoting Slingluff v. Weaver (1902), 66 Ohio St. 621,64 N.E. 574). "The primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector."State ex rel. Evans v. Moore (1982), 69 Ohio St.2d 88, 91,431 N.E.2d 311.
 {¶ 15} We find the language of R.C. 4115.03(B)(2), 4115.04(A),4115.08, and Ohio Adm. Code 4101:9-4-17 to be clear and unambiguous. Neither statute requires "construction." Instead, the statutes merely require the public authority to contract for a public improvement. Ohio Adm. Code 4101:9-4-17 references "construction", which, as noted above, is not part of the statutory language in cases such as this. The prevailing wage law takes effect anytime a public authority "contracts for" a public improvement. The monetary threshold that establishes, in part, "construction" is inapplicable. Therefore, regardless of the cost, the public authority would be required to comply with the prevailing wage law anytime it contracts for a public improvement.
 {¶ 16} However, our holding is limited by one important aspect of the case. Both the statutes and the regulation apply only when the project is to be advertised, which is part of the competitive bidding process requiring compliance with specific statutes and regulations. R.C. 307.86. See generally 2005 Ohio Atty. Gen. Ops. No. 2-298 (internal citations omitted). The statutes require the public authority to fairly estimate the total overall project "before advertising for bids." As stated in the record, requesting proposals is a different process than advertising for bids under the competitive bidding statutes. (Overmier Dep., Jan. 26, 2004, at 242). See also Rein Constr. Co. v. Trumbull CtyBd. of Commrs., 138 Ohio App.3d 622, 625, 741 N.E.2d 979 ("the board prepared a nine-page request for proposals * * * [o]nce completed, the board then advertised for sealed bids in a local newspaper"). In this case, the Commissioners were not required to advertise for bids because the project cost did not meet the competitive bidding threshold of $25,000, which the parties apparently concede. See R.C. 307.86.
 {¶ 17} R.C. 4115.04, 4115.08, and Ohio Adm. Code 4101:9-4-17 do not interact to require a fair estimate based solely on a "prevailing wage threshold" in the unusual situation presented here, however, the power to amend the statutory language, if it is desired to do so to accommodate a specific public purpose in such a case, is expressly reserved to the legislature. Section 1, Article II of the Ohio Constitution.
 {¶ 18} Although the Union urges us to adopt the holding of West Unityex rel. Beltz v. Merillat, 6th Dist. No. WM-03-016,2004-Ohio-2682, we find this matter distinguishable. In West Unity, the village utilized a contractor to construct a pole barn for storage. Id. at ¶ 2. Unlike this case, the cost of the village's project met the threshold amount for competitive bidding on new construction. Id. at ¶ 2-3. See also R.C. 307.86. In this case, the project was not new construction, and the facts are undisputed that each of the proposals submitted were well below the threshold of $25,000. Therefore, our holding is distinguishable from, and not in conflict with, the holding in West Unity.
 {¶ 19} On this record, we cannot find the trial court erred in granting summary judgment to Appellees; there are no genuine issues of material fact, Appellees are entitled to judgment as a matter of law, and reasonable minds would come to a similar conclusion, which is adverse to the non-movant.
 {¶ 20} The assignments of error are overruled, and the judgment of the Defiance County Common Pleas Court is affirmed.
[1] The parties have stipulated that $18,764 was the prevailing wage rate threshold for the relevant time period.
[2] In the amended complaint, the Union withdrew allegations that the Commissioners had unlawfully sub divided the renovation project to avoid the prevailing wage law.
[3] Beilharz filed two copies of Overmier's "affidavit", the first was neither signed nor notarized, and the second was signed, but not notarized. Each "affidavit" was filed separately.
[4] "No * * * public authority that constructs a public improvement with its own forces, the total overall project cost of which is fairly estimated to be more than the amounts set forth in division (B)(1) or (2) of section 4115.03 of the Revised Code * * * shall violate the wage provisions of sections 4115.03 to 4115.16 of the Revised Code[.]"
 Judgment affirmed.
ROGERS, J., concurs in judgment only.