OPINION
{¶ 1} Appellants, Earl and Mary Carter, Clarence and Jean Bones, Bella and Elizabeth Kovats, Nicola and Antoniette Pilla, Ronald and Carolyn Miscko, Heinrich and Ursula Hess, Carolyn Zeiter, Frank and Cathy Simoni, Gerry and Nancy Albert, Gino and Annie DiPaula, Ralph and Patricia Wieland, Linda Carlson, and Richard and Dolores Freedman, appeal from a final judgment of the Geauga County Court of Common Pleas granting appellees, Beech Brook, Halford and Billie Elston ("the Elstons"), the Cuyahoga County Board of County Commissioners ("the commissioners"), and the Cuyahoga County Department of Children and Family Services ("CCDCFS"), summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Beech Brook is a nonprofit corporation providing, among other services, foster child placement and administrative assistance for various government agencies. As part of its operations, Beech Brook maintains a network of licensed foster homes throughout northeast Ohio. Families, such as the Elstons, providing foster care are considered independent contractors and are responsible for the day-to-day supervision and welfare of the foster children placed in their custody.
 {¶ 3} CCDCFS has a contract with Beech Brook to provide foster care for abused, neglected, or dependent children from Cuyahoga County. One of those children, Marcus Moorer, was living with the Elstons on February 18, 2000, when he and two other individuals robbed the Clark Oil gas station in Chesterland, Ohio.[1] During the course of the robbery, unfortunately, Moorer shot and killed an employee and wounded another person.
 {¶ 4} Following this incident, appellants filed a complaint against appellees in the Geauga County Court of Common Pleas.[2] In their complaint, appellants alleged that the Elston foster home violated local zoning laws because Beech Brook had been placing children there as a result of criminal behavior. They also claimed that the Elstons had negligently supervised the foster children living in their home, creating a qualified private nuisance. Accordingly, appellants sought both declaratory and injunctive relief to prohibit the Elstons from continuing to use their residence as a foster home.
 {¶ 5} When the parties completed discovery, appellees filed separate motions for summary judgment. After appellants submitted a brief in opposition, the trial court considered the parties' arguments and issued a decision granting appellees' motions.
 {¶ 6} The trial court first found that the Elston foster home was a statutorily permitted use under R.C. 5103.0318 in residential districts. As for appellants' argument that the Elston foster home violated the township zoning resolutions because the children were placed there as a result of criminal behavior, the trial court concluded that the resolution in question did not prohibit the placement of unruly or delinquent juveniles in residential foster homes. Finally, the trial court determined that appellants had failed to offer any evidence showing that the Elstons were not properly supervising their foster children because the mere fact that some of the residents were involved in criminal conduct did not prove that those actions were the result of inadequate supervision or that they could have been otherwise prevented.
 {¶ 7} From this decision, appellants filed a timely notice of appeal with this court. They now submit the following assignments of error for our consideration:
 {¶ 8} "[1.] The trial court erred by granting summary judgment when there are genuine issues of fact in dispute in this case, to wit: (A) whether the inclusion of juveniles with criminal history in a treatment facility is precluded by the Chester Township Zoning Resolution prohibiting the collective housing of individuals with criminal type behavior, and (B) whether the operation of an improperly supervised juvenile treatment facility in a single family residential neighborhood constitutes a nuisance under the facts in the record.
 {¶ 9} "[2.] The trial court erred by granting summary judgment based on the trial court's improper determination of the credibility of plaintiff's expert affiant witness and other improper factual findings.
 {¶ 10} "[3.] The trial court erred by erroneously interpreting and rewriting Ohio law.
 {¶ 11} "[4.] The trial court erred by ruling that the improperly supervised Elston treatment facility is not a nuisance, when there is unrebutted factual evidence to the contrary in the record."
 {¶ 12} Appellants' four assignments of error present related issues. Accordingly, for ease of discussion we will consider them in a consolidated manner.
 {¶ 13} First, appellants argue that because the Elston foster home is a "treatment foster home," rather than a "certified foster home," the exemption in R.C. 5103.0318 does not apply. As a result, they maintain that because the Elstons' home does not satisfy the definition of "family" as provided in the local zoning laws it is not a permitted use.
 {¶ 14} Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268,1993-Ohio-176.
 {¶ 15} The party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. at 293.
 {¶ 16} If the moving party fails to satisfy this initial burden, summary judgment should be denied. Id. However, if this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id.
 {¶ 17} R.C. 5103.0318 provides that:
 {¶ 18} "Any certified foster home shall be considered to be a residential use of property for purposes of municipal, county, and township zoning and shall be a permitted use in all zoning districts in which residential uses are permitted. No municipal, county, or township zoning regulation shall require a conditional permit or any other special exception certification for any certified foster home."[3]
 {¶ 19} R.C. 5103.02 provides the following relevant definitions:
 {¶ 20} "* * *
 {¶ 21} "(B) `Family foster home' means a foster home that is not a specialized foster home.
 {¶ 22} "(C) `Foster home' means a private residence in which children are received apart from their parents, guardian, or legal custodian, by an individual reimbursed for providing the children nonsecure care, supervision, or training twenty-four hours a day. `Foster home' does not include care provided for a child in the home of a person other than the child's parent, guardian, or legal custodian while the parent, guardian, or legal custodian is temporarily away. Family foster homes and specialized foster homes are types of foster homes.
 {¶ 23} "* * *
 {¶ 24} "(F) `Specialized foster home' means a medically fragile foster home or a treatment foster home.
 {¶ 25} "(G) `Treatment foster home' means a foster home that incorporates special rehabilitative services designed to treat the specific needs of the children received in the foster home and that receives and cares for children who are emotionally or behaviorally disturbed, chemically dependent, mentally retarded, developmentally disabled, or who otherwise have exceptional needs."
 {¶ 26} As we noted earlier, appellants contend that R.C. 5103.0318
does not apply in this case because it does not specifically include "treatment foster homes." In other words, because the General Assembly chose to provide the various types of foster homes with different definitions, but did not then include every foster home under the protections of R.C. 5103.0318, appellants believe that the trial court erred in concluding that the Elston foster home was a permitted use.
 {¶ 27} R.C. 5103.02(C) clearly states that "[f]amily foster homes and specialized foster homes are types of foster homes." In turn R.C.5103.02(F) provides that "specialized foster homes" include both "medically fragile foster homes" and "treatment foster homes." When the definitions are read together then, it is obvious that the term "certified foster home" also encompasses "treatment foster homes." Accordingly, whether the Elstons' home is considered a "treatment," "family," or "specialized foster home" is immaterial, and the trial court was correct in finding that the Elston foster home was covered under R.C. 5103.0318 as a permitted use.
 {¶ 28} Appellants, however, also argue that even if the Elston foster home is a permitted use, it still violates local zoning laws prohibiting "any group of individuals who are in a group living arrangement as a result of criminal offenses." They insist that juveniles placed in a "treatment foster home" for "acts that otherwise constitutecriminal offenses fall within the zoning prohibition in Chester Zoning Resolution 2.28."
 {¶ 29} Section 2.28 of the Chester Township Zoning Resolution defines family as:
 {¶ 30} "one (1) or more persons related by blood, adoption, guardianship or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. A number of persons not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, guardianship or marriage shall be deemed to constitute a family. Family shall not include: any society, club, fraternity, sorority, association, lodge combine, federation, coterie, or the like organization; any group of individuals whose association is temporary or seasonal in nature; and/ orany group of individuals who are in a group living arrangement as aresult of criminal offenses." (Emphasis added.)
 {¶ 31} Despite appellants' allegations that the children living with the Elstons were placed there as the result of criminal conduct, there is absolutely no evidence to support this in the record. Although some of the children may have been living at the Elston home because of what may be considered criminal acts, there is no logical reason to assume, without something more to support it, that every child at the home was there for the same reason. In fact, Beech Brook presented uncontroverted evidence that it had never placed a child with the Elstons as the result of a court-ordered disposition following the adjudication of the child as a juvenile delinquent. The police reports submitted by appellants only addressed the conduct of children living with the Elstons after placement and have no bearing on whether the child was placed there for similar conduct. Also, Section 2.28 does not prohibit group living arrangements where the individuals have criminal records; rather, it prohibits "any group of individuals who are in a group living arrangement as a result of criminal offenses." Therefore, Section 2.28 of the Chester Township Zoning Resolution is not applicable.
 {¶ 32} Finally, appellants submit that the trial court erred in granting appellees summary judgment on their claim that the operation of the Elston foster home constituted a qualified private nuisance. Appellants maintain that the court improperly considered the credibility of their expert witness and then essentially ignored the other evidence showing that the Elstons failed to provide proper supervision over the children living in their home.
 {¶ 33} In order to succeed on a claim for injunctive relief, the plaintiff must show "that irreparable injury has been done or that the threat of injury is immediate or impending." Crestmont ClevelandPartnership v. Ohio Dept. of Health (2000), 139 Ohio App.3d 928, 937. The decision to grant or deny an injunction is a matter solely within the discretion of the trial court, and this court will not disturb the trial court's judgment absent an abuse of that discretion. Rein Constr. Co.Trumbull Cty. Bd. of Commrs. (2000), 138 Ohio App.3d 622, 631.
 {¶ 34} Appellants' request for an injunction was premised on the theory that the Elston foster home constituted a qualified private nuisance, which "is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in injury." Allen Freight Lines, Inc.v. Consol. Rail Corp., 64 Ohio St.3d 274, 275, 1992-Ohio-113, quotingRothfuss v. Hamilton Masonic Temple Co. (1973), 34 Ohio St.2d 176, 180. See, also, Cincinnati v. Beretta U.S.A., Corp., 95 Ohio St.3d 416,2002-Ohio-2480, at ¶ 8, quoting 4 Restatement of the Law 2d, Torts (1965), Section 821B(1) (defining a public nuisance as "an unreasonable interference with a right common to the general public."). As a result, appellants had to prove that each of the appellees was negligent in some aspect of the operation of the Elston foster home, and that their negligence created an unreasonable risk of injury to appellants.
 {¶ 35} Having carefully considered the materials submitted by the parties, we conclude that the trial court properly granted appellees summary judgment on this issue. There is no evidence that the Elstons, or, for that matter, any of the other appellees, negligently failed to supervise the foster children living in the home. Instead, the record shows that the Elstons were well trained as foster parents and that they devoted their full attention to the children living with them. Furthermore, the Elstons never received a complaint about the children from their neighbors. There is also nothing to suggest that the Elstons were aware of any behavioral problems within the home.
 {¶ 36} Appellants also failed to provide any evidence concerning the standard of proper supervision that would be acceptable. The mere fact that some of the children living with the Elstons were involved in criminal activity away from the home does not, by itself, demonstrate a lack of supervision. Children, whether living in a foster home or living with their biological parents, do sometimes find trouble.
 {¶ 37} Appellants counter, however, by arguing that the trial court improperly excluded their expert's opinion on this matter and simply ignored the police reports that demonstrated that the Elstons had failed to adequately supervise the children. With respect to the police reports, they provide no insight on the key issue of whether the Elstons were negligent in operating their residence as a foster home. There is nothing to suggest either that the incidents in question were caused by the children's living arrangements, or that they were somehow more likely to involve themselves in these situations than other teenagers living in the same community.
 {¶ 38} The police reports also fail to provide any evidence on the question of whether appellants were prevented from fully enjoying their properties. It is undisputed that none of the events included in the police reports involved appellants or their property, and there is no indication that appellants were even aware of every incident. In fact, several of the appellants admitted that the foster children appeared to be well behaved and that they had never personally observed them acting inappropriately.
 {¶ 39} As for the affidavit submitted by appellants' expert, Robert C. Hill ("Mr. Hill"), we conclude that the trial court correctly found that he was not qualified to give an opinion on the question of whether the Elston home constituted a qualified private nuisance. Civ.R. 56(E) provides in part that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would beadmissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." (Emphasis added.) Accordingly, it logically follows that if a court determines, even at the summary judgment stage, that a person is not qualified to give an expert opinion, the court may disregard it.
 {¶ 40} We are mindful that when reviewing rulings concerning the admissibility of expert testimony, the admissibility of such evidence is entrusted to the sound discretion of the trial court. McKinney v.Schlatter (1997), 118 Ohio App.3d 328, 338. Thus, the judgment of the trial court will not be disturbed absent an abuse of discretion. Mahanv. Bethesda Hosp., Inc. (1992), 84 Ohio App.3d 520, 525.
 {¶ 41} Evid.R. 702, which governs the admissibility of expert testimony, states that:
 {¶ 42} "A witness may testify as an expert if all of the following apply:
 {¶ 43} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons;
 {¶ 44} "(B) The witness is qualified as an expert by specializedknowledge, skill, experience, training, or education regarding thesubject matter of the testimony;
 {¶ 45} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 46} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 47} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 48} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 49} In his affidavit, Mr. Hill claims that he is "a municipal planner with more than thirty-seven (37) years of experience in zoning, land use and municipal planning." He then goes on to opine that "[a]n improperly supervised treatment foster home, which permits juveniles with severe emotional and behavioral problems to interact with the local community without adequate supervision and control, constitutes a nuisance." Moreover, based on his review of the police reports attached to appellants' brief in opposition to summary judgment, and the alleged "lack of rules and supervisory guidelines[,]" Mr. Hill believes that the Elston home is "an improperly supervised facility and nuisance."
 {¶ 50} Simply put, Mr. Hill's experience as a community planner and landscape architect does not qualify him as an expert on the operation of foster homes. While he may have had experience with zoning problems, something we cannot discern from his curriculum vitae, there is nothing in the record to suggest that the problems concerned foster homes or anything else that may have entitled Mr. Hill to give an opinion on the issues raised in appellants' complaint. As a result, Mr. Hill's affidavit did not set forth such facts as would be admissible in evidence because he was not "qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony."
 {¶ 51} Pursuant to the foregoing analysis, the trial court did not err in granting appellees summary judgment. Therefore, appellants' four assignments of error have no merit, and the judgment of the trial court is affirmed.
WILLIAM M. O'NEILL, J., CYNTHIA WESTCOTT RICE, J., concur.
[1] Wesley Pearson was one of the other two individuals involved. Although Pearson no longer lived with the Elstons, he and Moorer had lived there together for approximately two years prior to the robbery/homicide.
[2] Appellants also named Chester Township as a defendant in their complaint. The trial court, however, dismissed Chester Township from the action.
[3] R.C. 2151.418, which was repealed effective January 1, 2001, and recodified as R.C. 5103.0318 stated that "[a]ny foster home or family foster home shall be considered to be a residential use of property for purposes of municipal, county, and township zoning and shall be a permitted use in all zoning districts in which residential uses are permitted. No municipal, county, or township zoning regulation shall require a conditional permit or any other special exception certification for any certified foster home."