The STATE ex rel. JONES et al., Appellants,

v.

HAMILTON COUNTY BOARD OF COMMISSIONERS et al., Appellees.

[Cite as *State ex rel. Jones v. Hamilton Cty. Bd. of Commrs.* (1997), 124 Ohio App.3d 184.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950772.

Decided Oct. 31, 1997.

*Joseph J. Allotta* and *Richard P. James,* for appellants.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, *Robert E. Taylor* and *Philip L. Zorn, Jr.,* Assistant Prosecuting Attorneys, for appellees.

*N. Victor Goodman* and *Mark D. Tucker,* for *amicus curiae* Ohio Building and Construction Trades Council.

---

DOAN, Presiding Judge.

During January 1995, Simon L. Leis, Jr., Sheriff of Hamilton County, began to seek funding for painting the interior walls, trim, and floors of the Hamilton County Justice Center. The estimated cost of the project was in excess of $450,000. In February 1995, various discussions took place between the sheriff, County Administrator David J. Krings, Assistant Hamilton County Prosecuting Attorney James Harper, and various other county officials regarding the use of prisoners to paint the Justice Center. Ultimately, the decision was reached to use prisoners to paint the Justice Center. Bids were taken for the contract to supply paint and supplies to be used in the painting of the Justice Center. The paint and supplies contract was ultimately awarded to the Wilson Paint Company.

On April 6, 1995, R. Mike Campbell, Superintendent of County Buildings, submitted to the county administrator a request for transfer of funds in the amount of $144,350 for the painting of the Justice Center. The request for transfer stated:

"This Transfer will be for the painting of the Hamilton County Justice Center. Paint will include 375 gallons of trim paint, 2,225 gallons of wall paint and enough 100% solid floor epoxy to cover 200,000 sq/ft.

"All transfers will be for the purchase of wall and trim paints, 100% epoxy for the floors and miscellaneous painting supplies needed to do the work at the Hamilton County Justice Center."

Submitted with the request for transfer of funds was "Transfer Resolution No. 10," seeking approval for the request for transfer of funds. On April 26, 1995, the board of county commissioners approved Transfer Resolution No. 10 by a two-to-one vote.

On May 1, 1995, plaintiffs-appellants Ralph C. Jones and Ronald R. Houser, as taxpayers of Hamilton County, delivered a written request to Hamilton County Prosecuting Attorney Joseph T. Deters, requesting that the prosecutor institute an action, pursuant to R.C. 309.12, to enjoin the transfer of county funds to purchase paint and supplies, and to enjoin the use of prisoners to paint the Justice Center. The prosecutor declined to commence the requested action.

Plaintiffs-appellants, Jones, Houser, and the International Brotherhood of Painters and Allied Trades, Painters District Council No. 12 of Greater Cincinnati and Northern Kentucky, instituted this action, pursuant to R.C. 309.13, for a temporary restraining order, a preliminary and permanent injunction, and a declaratory judgment, requesting that the trial court hold that the purchase of paint and supplies for the painting of the Justice Center was in violation of R.C. 307.86 et seq., the Ohio competitive-bidding law. The action is also based on R.C. 153.31, which requires that a registered architect or a professional engineer must make "full and accurate plans" for any "addition to or alteration of" a public building, and R.C. 5103.18, which provides that plans for "important additions to or alterations in" jails, workhouses, municipal lockups, or prisons must be submitted to the Ohio Department of Rehabilitation and Correction before their adoption. Further, plaintiffs-appellants requested the trial court to hold that the proposed use of prisoners to paint the Justice Center was in violation of R.C. Chapter 5147 as it pertains to the employment of prisoners in workhouses or jails and R.C. Chapter 4115, Ohio's prevailing-wage law.

A hearing was held May 5, 1995, on the motion for a temporary restraining order. The sheriff and plaintiff-appellant Jones testified. Following the hearing, the parties stipulated that no painting would take place inside the Justice Center

for fourteen days. On May 22, 1995, a hearing on the motion for a preliminary injunction was held. On June 23, 1995, a stipulated order provided that the matter would be submitted to the court on plaintiffs-appellants' motion for a permanent injunction. By judgment entry dated September 22, 1995, the trial court denied the motion for a permanent injunction. Appellants timely appealed, raising four assignments of error for our review.

The first assignment of error alleges:

"The trial court erred as a matter of law by applying traditional equitable criteria and balancing the equities in denying plaintiffs-appellants' motion for permanent injunction."

■ R.C. 309.13 provides that if the prosecuting attorney fails to institute a civil action as contemplated in R.C. 309.12, a taxpayer may institute an action against any county officer "for misconduct in office or neglect of his duty, to recover money illegally drawn or illegally withheld from the county treasury and to recover such damages resulting from the execution of such illegal contract." The action may be brought in the name of the state, for the benefit of the county as if brought by the prosecuting attorney, to "restrain such contemplated misapplication of funds, or the completion of such illegal contract, or to recover, for the use of the county, all public moneys so misapplied or illegally drawn or withheld from the county treasury, or to recover * * * such money as is due the county." R.C. 309.12. R.C. 309.13 authorizes the issuance of an injunction as a remedy for the illegal expenditure of public funds. See *Pincelli v. Ohio Bridge Corp.* (1966), 5 Ohio St.2d 41, 34 O.O.2d 55, 213 N.E.2d 356.

The trial court's judgment entry of September 22, 1995 states:

"This matter came before the court to determine on the merits whether to issue a permanent injunction, as prayed for in the Plaintiffs' Verified Complaint. After consideration of the memorandum, evidence received during the hearing on the matter, and the arguments of counsel, the court concludes that the balancing on the factors required by law does not weigh in favor of the issuance of an injunction."

■ Appellants argue, citing *Ackerman v. Tri–City Geriatric & Health Care, Inc.* (1978), 55 Ohio St.2d 51, 9 O.O.3d 62, 378 N.E.2d 145, that in a statutory injunction action, a balancing of equities is not necessary and that an individual does not need to show irreparable harm or the absence of an adequate remedy at law, which are required to be balanced under traditional concepts for the issuance of equity injunctions.

In *Ackerman,* the Ohio Supreme Court held:

"In an action by the Director of Health to enjoin the operation of an unlicensed nursing home pursuant to R.C. 3721.08, an injunction shall be granted where it is undisputed that the evidence shows that the facility is a nursing home pursuant to R.C. 3721.01, that the nursing home is unlicensed and that the home is unlicensed because it does not comply with essential licensing requirements." *Id.* at syllabus.

The Supreme Court went on to point out that statutory actions granting government agents the right to sue to enjoin activities deemed harmful by the General Assembly are not designed primarily to do justice to the parties but to prevent harm to the general public. Therefore, statutory injunctions should issue if the statutory requirements are fulfilled. *Id.* at 57, 9 O.O.3d at 65–66, 378 N.E.2d at 149.

The *Ackerman* court was dealing with R.C. 3721.08, a statute that sets forth specific guidelines for the granting of an injunction and confers upon the trial court the jurisdiction to grant injunctive relief upon a showing that the statutory prerequisites have been met. R.C. 309.12 and 309.13 do not set forth statutory prerequisites for the issuance of an injunction.

In *State ex rel. Miller v. Anthony* (1995), 72 Ohio St.3d 132, 647 N.E.2d 1368, the Ohio Supreme Court held that a nuisance-abatement action brought pursuant to R.C. 3767.03 is an equitable action arising from the state's police power. R.C. 3767.03 provides that "the prosecuting attorney of the county in which the nuisance exists * * * may bring an action in equity * * * to abate the nuisance." "Nuisance-abatement actions seek injunctive relief and, as such, are governed by the same equitable principles that apply to injunctive actions generally." *Id.* at 136, 647 N.E.2d at 1371. R.C. 3767.03 does not set forth statutory prerequisites for the issuance of an injunction to abate a nuisance. Nuisance-abatement actions are governed by general equitable principles. *Id.*

R.C. 309.12 and 309.13 are akin to the nuisance-abatement statute considered by the *Miller* court in that they provide that a taxpayer may file a civil action in the common pleas court for, among other things, equitable relief in the nature of an injunction. R.C. 309.12 and 309.13 do not provide prerequisites for the issuance of an injunction. We hold that taxpayer actions pursuant to R.C. 309.12 and 309.13 are to be governed by the equitable principles that apply to injunction actions generally. The first assignment of error is overruled.

We now turn to the third assignment of error, which alleges that the trial court erred in denying appellants' first request for injunctive relief. Appellants argue that there was reasonable cause to believe that a misapplication of county funds had occurred or was about to occur in that appellees (1) failed to comply with the requirements of R.C. 307.86, the Ohio competitive-bidding law, with respect to the labor component of the Justice Center project, (2) materially altered the bid for

the paint and supplies submitted by Wilson Paint; (3) failed to have plans for the painting of the Justice Center drawn up by a registered architect or a registered professional engineer pursuant to R.C. 153.31, and (4) failed to submit any plans for the painting of the Justice Center to the Ohio Department of Rehabilitation and Correction for approval as required by R.C. 5103.18.

Appellants argue that appellees' contract with Wilson Paint should have been enjoined because one of the provisions of the bid was materially altered. Sheriff Leis testified that on May 22, 1995, a representative of Wilson Paint recommended that a water-based paint, which differed from the paint specified in Wilson Paint's bid, be used for the trim of the Justice Center. The substitute paint cost less than the trim paint originally contained in the bid specification. The use of the substitute paint, appellants argue, constituted a material alteration of Wilson Paint's bid.

Initially, we note that in the stipulations of the parties, appellants withdrew the portions of paragraphs eighteen and thirty-seven of their complaint that related to the purchase of paint and supplies. Further, we hold that eliminating trim paint costing $4,968.75 out of a contract totaling $126,736.25 and replacing it with paint that costs less does not constitute such a material alteration of Wilson Paint's bid as to require the trial court to enjoin the execution of the paint and supplies contract.

Appellants next argue that the trial court should have issued an injunction because no plans for the painting of the Justice Center were made by a registered architect or a registered engineer as required by R.C. 153.31.

R.C. 153.31 provides in part:

"When it becomes necessary for the board of county commissioners of a county to erect or cause to be erected a public building, or a substructure for a bridge, or an addition to or alteration thereof, before entering into any contract therefore or repair thereof or for the supply of any materials therefore, they shall cause to be made by a registered architect or registered professional engineer the following:

"(A) Full and accurate plans showing all necessary details of the work and materials required, with working plans suitable for the use of mechanics or other builders in the construction thereof, drawn so as to be easily understood;

"(B) Accurate bills, showing the exact amount of the different kinds of material, necessary for the construction, to accompany the plans;

"(C) Full and complete specifications of the work to be performed showing the manner and style required to be done, with such directions as will enable a competent builder to carry them out, and which will afford to bidders all needful information;

"(D) A full and accurate estimate of each item of expense, and of the aggregate cost thereof."

R.C. 153.31 *et .seq.* are designed to ensure that contracts for the erection, alteration, repair, or improvement of county buildings are awarded through the competitive bidding process. See *Pincelli v. Ohio Bridge Corp., supra; State ex rel. Schaefer v. Montgomery Cty. Bd. of Commrs.* (1967), 11 Ohio App.2d 132, 40 O.O.2d 296, 229 N.E.2d 88; *State ex rel. Schulman v. Pokorny* (Dec. 23, 1976), Cuyahoga App. No. 35260, unreported.

In announcing that it would accept bids to supply paint for the Justice Center project, the. county set forth specifications that included 2,225 gallons of wall paint, 375 gallons of trim paint, and enough floor paint to cover 200,000 square feet. The contract for the purchase of paint and supplies was obtained through the competitive bidding process. For the labor portion of the Justice Center project, the sheriff proposed to employ inmate labor, for which no contract would be executed. The trial court did not err in refusing to grant an injunction based upon any alleged violations of R.C. 153.31.

Appellants also argue that the county's failure to submit plans for the painting of the Justice Center to the Ohio Department of Rehabilitation and Correction violated R.C. 5103.18, and that, therefore, the trial court should have granted injunctive relief. R.C. 5103.18 provides:

"Before their adoption by the proper officials, plans for new jails, workhouses, children's homes, infirmaries, state institutions, and municipal lockups or prisons, and for important additions to or alterations in such existing institutions, shall be submitted to the department of human services, the department of mental health, the department of mental retardation and developmental disabilities, or the department of rehabilitation and correction, as the case requires, for its approval."

Appellees presented the testimony of Joseph Schmidtz, Director of Corrections for the Hamilton County Sheriff's Department. Schmidtz was formerly a jail inspector for the Ohio Department of Rehabilitation and Correction. Schmidtz testified that he was familiar with R.C. 5103.18. He stated that he never had to inspect a jail, nor did he ever see plans submitted for a jail, where the only work being done was inside painting. Schmidtz stated that to the best of his knowledge no such plans were required. We hold that the painting of the inside of the Justice Center is not an "important addition to or alteration in" the Justice Center so as to require the submission of plans to the Ohio Department of Rehabilitation and Correction under R.C. 5103.18.

The third assignment of error is overruled.

■ Appellants' fourth assignment of error alleges that the trial court erred in denying their second request for injunctive relief. Appellants argue that the use of inmates to paint the inside of the Justice Center is not an appropriate form of inmate labor under the sheriff's work-detail program.

The sheriff of Hamilton County has operated a voluntary work-detail program since at least 1988. On July 8, 1987, the Hamilton County Municipal Court entered an order that approved a work-detail program granting inmates good-time credits on the basis of two days' credit for every one day completed in the program. On November 23, 1987, the Hamilton County Municipal Court adopted a resolution approving the work-detail program. A resolution was approved by the Hamilton County Court of Common Pleas on April 18, 1990, granting inmates two days' credit for each day worked, except for inmates on the kitchen detail, who were to receive three days' credit for each day worked. The stipulated documents indicate that the inmates were employed in various Justice Center occupations, which included doing minor repairs, painting, removing trash, washing walls, and cleaning floors and carpets. The sheriff testified that he planned to use inmates who volunteered for the work-detail program to paint the Justice Center. He further testified that inmates had done "odds and ends" painting at the Justice Center for the past six or seven years.

The sheriff testified that each "pod" in the Justice Center would be painted individually. A pod is a section of the jail housing eight, sixteen, twenty-four, or thirty-two inmates. The inmates in each pod would be moved, and the pod would be completely painted before beginning the next pod. The sheriff stated that a test pod had been painted without incident.

Appellants argue that the painting of the Justice Center is not an appropriate form of inmate labor because the project is large and beyond the scope of the work-detail program, and because the inmates have done only "odds and ends" painting in the past. Further, appellants argue, there are unresolved safety issues concerning inmates attempting such a large project.

R.C. 341.01 provides that the sheriff has charge of the county jail. The sheriff is responsible for the preparation of operational policies and procedures and rules of prison conduct, in accordance with the minimum standards for jails in Ohio promulgated by the Department of Rehabilitation and Correction, subject to review and approval by the court of common pleas. R.C. 341.02. The Department of Rehabilitation and Correction is required by R.C. 5145.16 and 5145.03 to establish and promulgate rules for a program for the employment of state prisoners. The employment may be in "institutional jobs necessary for the proper maintenance and operation of the institution." R.C. 5145.16; R.C. 5145.03. R.C. 2947.151 states that the sheriff may allow reductions of inmates' sentences in consideration of the quality and amount of work done in the kitchen,

in the jail offices or on the jail premises or elsewhere, upon written concurrence of the presiding or sentencing judge or magistrate. See *Skapura v. McFaul* (1978), 54 Ohio St.2d 348, 8 O.O.3d 356, 376 N.E.2d 1339.

Inside painting is clearly work done on jail premises that is "necessary for the proper maintenance" of the Justice Center. Therefore, it is an appropriate form of inmate labor pursuant to statute. Further, painting has been included as inmate employment under the sheriff's work-detail program. We find nothing that requires painting done by inmates to be limited to small-scale projects.

Appellees' expert witness testified that the paint specified for the Justice Center project would pose no safety risks unless it was swallowed. Further, the expert testified that no training was needed to apply the paint. Appellants' expert witness testified that certain safety problems could arise with the specified paint and that special training was needed in order to apply the paint correctly. The trial court was free to believe appellees' expert witness and to conclude that there were no unresolved safety issues concerning the painting of the Justice Center.

Appellants argue that if the painting of the Justice Center is an appropriate form of inmate labor under the work-detail program, the Ohio prevailing-wage law, R.C. 4115.03 through 4115.16, applies to the project.

R.C. 4115.10(A) provides in part:

"No person, firm, corporation, or public authority that constructs a public improvement with its own forces * * * shall violate the wage provisions of sections 4115.03 to 4115.16 of the Revised Code, or suffer, permit, or require any employee to work for less than the rate of wages so fixed, or violate the provisions of section 4115.07 of the Revised Code."

R.C. 4115.04 states in part:

"Every public authority authorized to contract for or construct with its own forces a public improvement, before advertising for bids or undertaking such construction with its own forces, shall have the bureau of employment services determine the prevailing rates of wages of mechanics and laborers * * * in the locality where the work is to be performed."

R.C. 4115.05 provides in part:

"The prevailing rate of wages to be paid for a legal day's work * * * to laborers, workmen, or mechanics upon public works shall not be less * * * than the prevailing rate of wages then payable in the same trade or occupation in the locality where such public work is being performed, under collective bargaining agreements or understandings, between employers and bona fide organizations of

labor in force at the date the contract for the public work, relating to the trade or occupation, was made * * *."

In enacting the prevailing-wage law, the legislature intended to provide a "comprehensive, uniform framework for, *inter alia,* worker rights and remedies vis-à-vis private contractors, subcontractors and materialmen engaged in the construction of public improvements." *Ohio Asphalt Paving, Inc. v. Ohio Department of Indus. Relations* (1992), 63 Ohio St.3d 512, 515, 589 N.E.2d 35, 37; *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 147, 431 N.E.2d 311, 313. "[T]he primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector." *Id.*

An inmate performing prison labor is not an employee of the governmental agent in charge of the jail. *Republic–Franklin Ins. Co. v. Amherst* (1990), 50 Ohio St.3d 212, 553 N.E.2d 614 (a person who consents to perform community service in lieu of a sentence is not considered an employee of the agency where the work is performed because there is no express or implied contract of hire between the community-service worker and the agency); *Moore v. Ohio Dept. of Rehab. & Corr.* (1993), 89 Ohio App.3d 107, 623 N.E.2d 1214 (ordinary prison labor performed at a state correctional facility is not predicated on an employer-employee relationship and thus is not within the scope of state and federal work-safety statutes); *Keil v. Dept. of Rehab. & Corr.* (1989), 57 Ohio Misc.2d 40, 567 N.E.2d 324 (a claim by a working inmate against the state of Ohio should be decided on ordinary negligence principles, because an inmate working in a correctional institution is not an employee of the state); *Perotti v. Ohio State Emp. Relations Bd.* (June 5, 1989), Scioto App. No. 1742, unreported, 1989 WL 62930 (working inmate's complaint of unfair labor practice against the Southern Ohio Correctional Facility at Lucasville is not covered by R.C. Chapter 4117, because inmates serving sentences are not there by virtue of appointment or employment); *Schwartz v. Ohio Dept. of Admin. Serv.* (June 4, 1981), Richland App. No. CA–1977, unreported, 1981 WL 6291 (an inmate of an Ohio penal institution is not an employee within the contemplation of the Ohio Workers' Compensation Act); *Tyner v. Marion Corr. Facility* (Mar. 31, 1981), Marion App. No. 9–80–46, unreported, 1981 WL 6820 (workers' compensation statutes do not include prisoners who are injured while performing prison work, because the inmates are not employees of the penal institution).

The prevailing-wage law applies to construction undertaken by a public authority "with its own forces." R.C. 4115.04; R.C. 4115.10. Inmates performing voluntary prison labor in order to earn good-time credits under the work-detail program are not employees of the county, and, therefore, they do not

constitute the county's "own forces." R.C. 4115.10 states that *employees* on public improvements must be paid the prevailing wage. R.C. 4115.10(B) provides that an *employee* on a public improvement who is paid less than the prevailing wage may file a complaint with the Bureau of Employment Services.

R.C. 4115.05 requires that laborers, workers, and mechanics on public works be paid the prevailing rate of wages then payable in the same trade or occupation in the locality where the public work is being performed. Inmates receiving good-time credit for voluntarily participating in the work-detail program are not practicing a particular trade or occupation other than that of inmate. They are not paid wages. While an inmate may perform some of the tasks of a laborer, worker, or mechanic, his work performance is limited to the duties set forth by the sheriff, as authorized by the courts, and the duration of his sentence.

In dealing with work-release programs, which provide for the employment of prisoners outside the jail, the legislature has specifically provided that "[a]ny prisoner participating in a work-release program shall be paid remuneration, subject to garnishment, and have hours and other conditions of work that are substantially equal to those prevailing for similar work in the locality." R.C. 5147.28(E). R.C. 2947.151, which allows for the reduction of sentences in consideration of labor performed on jail premises, has no such provision. If the legislature had intended to include such a provision in R.C. 2947.151, it could have done so.

We conclude that the Ohio prevailing-wage law does not apply to inmates performing voluntary labor on jail premises for good-time credit pursuant to the work-detail program. The primary purpose of the prevailing-wage law, to protect worker rights and the integrity of the collective-bargaining process by preventing the undercutting of employee wages, is not compromised by our holding, because the inmates are not employees and they receive no wages. The fourth assignment of error is overruled.

For the reasons set forth above under the first, third, and fourth assignments of error, the second assignment of error, which alleges that the trial court erred in denying the motion for a permanent injunction, is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN, J., concurs.

GORMAN, J., concurs separately.

GORMAN, Judge, concurring.

I concur with the majority's holding that the sheriff has the discretion to use prisoner labor through a work-detail program to paint the interior walls, floors, and trim of the pods in the Justice Center without the necessity of complying with the Ohio prevailing-wage law, R.C. 4115.03 through 4115.16.

Painting the Justice Center is not "maintenance," but is, rather, "construction" as that term is defined in the prevailing-wage statute. R.C. 4115.03(B)(2). Thus, contrary to the appellees' argument, painting a county jail is a public improvement under the statute. However, this case presents a much narrower issue: whether a prisoner in the county jail performing such work as part of the sheriff's work-detail program is required to be paid the prevailing wage under the statute. While the majority's analysis cogently explores a number of code sections relating to convict labor in the penitentiary (R.C. 5145.16), private employment of prisoners (R.C. 5147.28), and credit under an intrajail program (R.C. 2947.151), I believe that such analysis, although valid, is secondary to the analysis provided by the Ohio Supreme Court in *Internatl. Union of Operating Engineers, Local 18 v. Dan Wannemacher Masonry Co.* (1988), 36 Ohio St.3d 74, 521 N.E.2d 809.

In *Wannemacher*, the court considered the issue of whether a sole proprietor who personally performed physical work as a laborer, worker, or mechanic in the construction of a public improvement was himself subject to the prevailing-wage law. In holding that he was not, the court focused exclusively on whether he was an "employee" as contemplated by the statute. In making this determination, the court relied upon the definition of an "employee" in Black's Law Dictionary (5 Ed.1979) as "one who works for an employer; a person working for salary or wages." *Wannemacher*, 36 Ohio St.3d at 77, 521 N.E.2d at 812, citing Black's Law Dictionary (5 Ed.1979) 471.

Although the court in *Wannemacher* expressly limited its holding to an employer who is a sole proprietor, the analysis provided by the court is, in my opinion, controlling here. Because, as the majority amply demonstrates, prisoners in a work-detail program do not work for a salary or wages and are not considered the sheriff's employees, they are not subject to the prevailing-wage law. To hold otherwise would depart from the analysis given to us by the Ohio Supreme Court in *Wannemacher*. As with other judicially created exceptions, disparate application tends to dilute broad policy considerations. This case is rendered even more difficult because two strong public interests compete: the need to protect the integrity of the collective-bargaining process by preventing the undercutting of employee wages in the private construction sector, and the need for jail space and the laudable goal of reducing the expense and danger of an overcrowded system through the early release of prisoners who have earned credit against their sentences by performing institutional work.

I write separately also to express my concern for an issue that was not addressed. The Public Employees Collective Bargaining Act, R.C. 4117.08(A), provides that "[a]ll matters pertaining to wages, hours, or terms and other conditions of employment * * * are subject to collective bargaining." Where a school district attempted to privatize its nursing services, the Ohio Supreme Court held that reassigning work previously performed by members of a bargaining unit to persons outside the unit affected a mandatory subject of collective bargaining under R.C. 4117.08(A). *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 533 N.E.2d 264, paragraph three of the syllabus. Although the requirement to bargain does not require that the parties reach agreement, "[i]t does, however, provide a process whereby employees will be consulted about decisions which have a profound impact on them and, thus, industrial peace will be preserved and promoted." *Id.* at 263, 533 N.E.2d at 269. Thus, it would appear that even if the Justice Center was being painted for the first time, the act of unilaterally assigning the work to prisoners, who are persons outside a bargaining unit, may have been a mandatory subject of collective bargaining pursuant to R.C. 4117.08(A) and (C).

This issue was not raised in the trial court or here. Furthermore, the record does not indicate whether Justice Center employees are members of a bargaining unit, and, if they are, whether the work here was of a kind arguably covered by the collective-bargaining agreement. Therefore the issue is not presently before us. I raise the issue, however, because of its significant importance and otherwise concur in the majority's well-reasoned analysis.