DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Williams County Court of Common Pleas, which denied appellant's application for an injunction and petition for writ of mandamus.
 {¶ 2} On July 29, 2002, the Building Committee for the village of West Unity ("Village"), met to discuss the construction of a pole barn to be used as a Village storage building. The Building Committee approved a set of plans and obtained a cost estimate for the proposed public improvement from Bell Engineering. Bell Engineering's estimate was $60,720. It is undisputed that the cost estimate submitted by Bell engineering did not include the prevailing wage rate for the locality in which the Village is situated. The Building Committee then submitted the plans to the Village Council, which approved the plans and let the contract out for bids. The Village Council awarded the contract to Dave Nixon Construction, which offered a bid of $54,921, and construction commenced on the storage building.
 {¶ 3} On October 11, 2002, appellant, Jeff Beltz, instituted, pursuant to R.C. 733.59, a taxpayer's action on behalf of the Village. The named defendants in the complaint are appellees, Richard Merillat, the Mayor of the Village, and the six members of the Village Council. Appellant asserted that the estimate prepared by Bell Engineering was not "fairly estimated" within the meaning of Ohio's Prevailing Wage Law, R.C. 4115.03 to R.C.4115.16. He claimed that any properly calculated estimate would be in excess of the threshold, $62,549, that would require compliance with Ohio's Prevailing Wage Law.
 {¶ 4} In Count 1 of his complaint, appellant therefore asked the court, pursuant to R.C. 733.56, for preliminary and permanent injunctions that would prevent the misapplication of Village funds, an abuse of Village corporate powers, and the performance of contracts in violation of Ohio law. Specifically, appellant wanted appellees restrained "from performing the contract with Dave Nixon Construction and from entering into any future contracts to perform construction on the storage building that might be in contravention of Ohio's Prevailing Wage Law. Count 2 of the complaint petitioned for a writ of mandamus compelling appellees to act in accordance with various provisions of R.C.4115.03 to R.C. 4115.16.
 {¶ 5} On October 21, 2002, the trial court denied appellant's motion for a temporary restraining order and scheduled the hearing on the request for a preliminary injunction for October 31, 2002. However, upon appellant's request, the hearing date was continued until December 3, 2002. On that date, evidence was offered on the merits of both the application for a preliminary injunction and the application for a permanent injunction.
 {¶ 6} At the hearing, and in a post-hearing brief, filed on March 31, 2003, appellant urged that in construing the relevant sections of Ohio's Prevailing Wage Law, and the regulations promulgated thereunder, together, Bell Engineering's cost estimate was required to include the "prevailing wage rate in the locality." Based on the evidence offered at the hearing, appellant claimed that a "fairly estimated" cost estimate is $86,675.38. Appellant again asked that the court restrain appellees from completing the construction of the storage building and to compel appellees to comply with the applicable provisions of R.C. 4115.03 to R.C. 4115.16.
 {¶ 7} On July 1, 2003, the trial court denied appellant's application for preliminary and permanent injunctions and for a writ of mandamus. In interpreting prevailing wage law in conjunction Ohio Adm.Code: 9-4-17(A), the court found, in essence, that in "fairly estimating" a pre-bid cost for a project involving the new construction of a public improvement, the estimator, in this case, Bell Engineering, did not have to include the prevailing wage. Appellant appeals that judgment and sets forth the following assignments of error:
 {¶ 8} "1. The trial court committed reversible error when it held that O.A.C. 4101:9-4-17(A) does not apply to new construction."
 {¶ 9} "2. The trial court committed reversible error when it refused to hold that the prevailing wage law requires the use of the prevailing rate of wages in all construction cost estimates."
 {¶ 10} "3. The trial court committed reversible error when it refused to give effect to the statutory standards under R.C.4115.03(B) that the `total overall project cost' be 'fairly estimated'."
 {¶ 11} "4. The trial court committed reversible error when it refused to hold that the total overall project cost of the public improvement underlying this action, fairly estimated, is "$86,675.38 and thus subject to the prevailing wage law."
 {¶ 12} We must first address the question of whether the appeal before us is moot. At the time of the hearing on appellant's causes of action, testimony revealed that the storage facility was "98%" complete-only the gutters and a little trim work remained to be done. On appeal, appellees contend that the storage building was completed by April 28, 2003.
 {¶ 13} Appellant does not dispute this fact. Instead, appellant argues that any injunction issued by the trial court would not be prospective because the issue presented is "capable of repetition, yet, evading review" and of "great public or general interest." Consequently, appellant maintains that this appeal is not moot and, therefore, this court can address the issues raised herein.
 {¶ 14} If a village solicitor believes that a village is misapplying village funds, abusing its corporate powers, or executing or performing a contract made, inter alia, on behalf of the village in contravention of laws or ordinances, the village solicitor may institute an injunctive action on behalf of the village. R.C. 733.56. When a village solicitor fails, upon the written request of a taxpayer, to bring such an action, the taxpayer has the right to initiate a suit seeking an injunction in his own name on behalf of the village. R.C. 733.59.
 {¶ 15} Notwithstanding the right of a taxpayer to initiate proceedings on behalf of a Village, courts do not have the jurisdiction to consider moot issues. Carver v. Twp. ofDeerfield (2000), 139 Ohio App.3d 64, 77. Nonetheless, courts do have the jurisdiction to address issues in those cases where the issue or issues is "capable of repetition, yet evading review" or if it involves a matter of public or great general interest. Inre Suspension of Huffer (1989), 47 Ohio St.3d 12, paragraph one of the syllabus.
 {¶ 16} Here, it is possible that a taxpayer's request for an injunction to deter the construction of a public improvement could be completely litigated before the construction project is finished. Further, and assuming, arguendo, that, as here, the trial court would deny the applicant's request for a temporary restraining order and/or a preliminary injunction, a reasonable expectation that appellant would be subject to the same action again does not exist. An injury is not deemed capable of repetition merely because someone, at sometime, might suffer the same harm; there must be a reasonable chance that it will happen again to the complaining party. Weinstein v. Bradford (1975),423 U.S. 147, 149. It is undisputed that Jeff Beltz relocated outside the limits of the village of West Unity during the course of these proceedings. Therefore, it is highly unlikely that he will ever be subjected to this particular action again. As a result, the first exception to the mootness doctrine is not applicable to this cause.
 {¶ 17} This case does, nonetheless, involve a question of public or great general interest. First, the storage building is a public improvement funded by taxpayers. A decision in this case will affect not only those taxpayers residing in the Village, but will also affect taxpayers throughout Ohio. Second, prevailing wage law is a matter of "statewide concern for the integrity of the collective bargaining process in the building and construction trades * * *." State ex rel. Evans (1982),69 Ohio St.2d 88, syllabus. Accordingly, the matters raised in this cause are of a public and great general interest. Thus, while we conclude that this case is technically moot as to the conflict between the parties, we find that we have the jurisdiction to consider and answer the question raised by appellant. DanisClarkco Landfill Co. v. Clark County Solid Waste Mgmt. Dist.
(1995), 73 Ohio St.3d 590, 599 (resolving the prevailing wage law questions in a taxpayer's suit in a case where the public improvement was "completed several years ago"); FranchiseDevelopers, Inc. v. Cincinnati (1987), 30 Ohio St.3d 28, 31.
 {¶ 18} Appellant's first and second assignments of error are interrelated and shall, therefore, be considered together. In these assignments, appellant asserts that the trial court erred in interpreting Ohio Adm. Code: 9-4-17(A) because the language in that regulation plainly and unambiguously requires that the prevailing wage in the locality of the construction or reconstruction of a public improvement must be included in the "fairly estimated" cost estimate acquired before letting out a construction contract for bids. He further contends that the lower court's interpretation disregards the intent of the legislature in enacting R.C. 4115.03 to R.C. 4115.16. We agree.
 {¶ 19} In analyzing a statute or regulation, "the paramount goal is to ascertain and give effect to the legislature's intent in enacting the statute." Brooks v. Ohio State Univ. (1996),111 Ohio App.3d 342, 349. "`Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation.'" Storer Communications, Inc. v. Limbach
(1988), 37 Ohio St.3d 193, 194, quoting Sears v. Weimer
(1944), 143 Ohio St. 312, paragraph five of the syllabus. If it is ambiguous, we must then interpret the statute to determine the legislature's intent. State v. Hairston, 101 Ohio St.3d 308,2004-Ohio-969 at ¶ 13.
 {¶ 20} Statutes and regulations that relate to the same general subject matter must be read in pari materia, and, in construing them together, a "court must give such a reasonable construction as to give the proper force and effect to each and all such statutes [and regulations]." Johnson's Markets, Inc. v.New Carlisle Dept. of Health (1991), 58 Ohio St.3d 28, 35;IBEW, Local Union No. 8 v. Vaughn Industries, Inc., 6th
Dist. Nos. WD-03-048, WD-03-028, 2004-Ohio-1655 at ¶ 58.
 {¶ 21} We begin with the proposition that, under prevailing wage law, the Village is a "public authority"[1] and that its new storage building is a "public improvement."[2]
"Construction," when used within the context of prevailing wage law, means either new construction of a public improvement or the reconstruction, enlargement, alteration, painting, renovation, or remodeling of any public improvement. R.C. 4115.03(B)(1) and R.C.4115.03(B)(2), respectively.
 {¶ 22} In order for prevailing wage law to apply to a given public improvement the cost of the construction must pass a threshold level set by the Administrator of the Bureau of Employment Services. R.C. 4115.034. It is undisputed that as of January 1, 2002, the administrator set the threshhold level for new construction of a public improvement at $62,549 and for reconstruction at $18,764. These threshhold amounts must include the "fairly estimated" total overall project cost. R.C.4115.03(B)(1) and (B)(2). R.C. 4115.10(A) prohibits the payment of wages that are less than the prevailing wage on those public improvement projects that have a total overall project cost that is fairly estimated to be more than the threshold levels set forth in R.C. 4115.03(B)(1) and (B)(2).
 {¶ 23} The regulation, Ohio Adm. Code 4101: 9-4-17, that is the subject of this dispute is captioned "Scope of Project." A note following the rule indicates that it amplifies R.C. 4115.03
and R.C. 4115.10. To "amplify" means "to expand" or "to make larger or greater." Merriam-Webster's Collegiate Dictionary (10 Ed. 1993) 40. Thus, Ohio Adm. Code 4101: 9-4-17 expands upon or enlarges the scope of R.C. 4115.03 and R.C. 4115.10.
 {¶ 24} Ohio Adm. Code 4101:9-4-17 provides, in material part:
 {¶ 25} "(A) The construction of a public improvement shall be `fairly estimated to be more than fifteen thousand dollars adjusted biennally by the administrator, `based on the prevailing wages in the locality at the time the project is let out for bidding, whether done at one time or in phases."
 {¶ 26} "(B) Whenever a contract for the construction of a public improvement project exceeding fifteen thousand dollars adjusted biennally by the administrator in value is awarded to a contractor by a public authority, and the contractor begins performance but is unable to complete the project, and it therefore becomes necessary for the public authority to contract with a new contractor to complete the project, any new contractor shall be required to pay the prevailing rates of wages regardless of whether the contract awarded to the succeeding contractor for completing the project is worth less than fifteen thousand dollars.
 {¶ 27} "(C) A public authority may not subdivide a project into component parts or projects of less than fifteen thousand dollars each unless such projects under fifteen thousand dollars are conceptually separate and unrelated to each other, or encompass independent and unrelated needs of the public authority. * * * A single project which exceeds the fifteen thousand dollar limit as set forth in this rule shall constitute construction of a public improvement regardless of how many separate contracts are included within the project."
 {¶ 28} Unfortunately, Ohio Adm. Code 4101:9-4-17 is poorly drafted and does not clearly articulate how it amplifies R.C.4115.03 and R.C. 4115.10. We are of the opinion, however, that by reading the parts of the regulation and the statutes in pari materia, that we can discern its meaning. Specifically, reading Parts (A), (B) and (C) of the regulation together reveals that it amplifies the meaning of "the construction of a public improvement," as defined in R.C. 4115.03 (C).
 {¶ 29} Pursuant to Ohio Adm. Code 4101:9-4-17, a public authority does not engage in the construction of a public improvement, in this case, the construction of a building, unless the "fairly estimated" scope of the construction costs exceeds $15,000. Part (A) of the regulation imposes a duty on the public authority to, at the pre-bidding stage, base its "fairly estimated" cost of construction of a public improvement on the prevailing wage in that locality at the time. Part (B) supports this interpretation because it enforces the payment of a prevailing wage on those public improvement projects that have a pre-bid construction cost of over $15,000 but were not completed by the original contractor. Part(C) prevents the avoidance of the regulation by excluding the division of a single project having a fairly estimated total construction cost over $15,000 into a series of small projects in which cost of labor based on the prevailing wage in the pre-bid analysis is below $15,000.
 {¶ 30} What then is the effect of Ohio Adm. Code 4101:9-4-17
on R.C. 4115.03(B)(1) and (B)(2)? Based upon our interpretation of the regulation and the statutes involved, we can only conclude that any "fair estimate" of the total overall cost of the construction of a public improvement must automatically include the cost of labor based on the prevailing wage in the locality at the time the project is let out for bidding. Thus, the regulation is applicable to both R.C. 4115.03(B)(1) and (2) for determining the total overall project "fairly estimated" cost. Any other interpretation of the statutes and regulation would not comport with the stated intent of the General Assembly in enacting R.C.4115.03 to R.C. 4115.16. Accordingly, appellant's first and second assignments of error are found well-taken.
 {¶ 31} In his third and fourth assignments of error, appellant argues that (1) the trial court erred in finding that Bell Engineering's total overall project cost estimate for the construction of the storage building met the meaning of "fairly estimated" in R.C. 4115.03(B); and (2) the court erred in failing to adopt the total overall project cost estimate presented by his expert, Bud Willson, at the hearing on appellant's request for injunctive relief.
 {¶ 32} We find appellant's third assignment of error well-taken solely because Bell Engineering failed to include labor costs based on the pertinent prevailing wages in the locality of the Village in its pre-bid cost estimate. Appellant's fourth assignment of error is found well-taken, but only to the extent that appellant's expert included the prevailing wages in his "fair estimate."
 {¶ 33} The Village raises, pursuant to R.C. 2505.22, the following cross-assignment of error to prevent reversal:
 {¶ 34} "Appellant lacks standing, lacks a private cause of action; and the trial court was without subject matter jurisdiction."
 {¶ 35} The Village argues that because Beltz relocated outside Village limits during the pendency of this case in the court below that he lost his standing as a taxpayer. Standing, like other bases of jurisdiction, is determined at the inception of the lawsuit. Lujan v. Defenders of Wildlife (1992),504 U.S. 555, 570 n. 5; Haskell v. Washington Township (C.A. 6 1988),864 F.2d 1266, 1275. This court has previously determined that a taxpayer has the requisite standing to bring suit under R.C.733.59 to challenge a public authority's failure to comply with prevailing wage law. Rossford ex rel. Seger v. Zuchowski (April 12, 2002), 6th Dist No. WD-01-042. Here, it undisputed that Beltz was a taxpayer residing in the Village at the commencement of the instant case and that public funds were used for the construction of the new storage facility. Thus, Beltz had standing at the commencement of this suit that continued throughout these proceedings. The Village's remaining arguments actually relate to the issue of mootness, an issue that this court addressed infra. For these reasons, the Village's cross-assignment of error to prevent reversal is found not well-taken.
 {¶ 36} Having made the foregoing determinations, we find that because the storage facility is completed, we cannot afford appellant his requested injunctive relief or a writ of mandamus. See U.S. Corrections Corp. v. Ohio Dept. of Indus.Relations (1995), 73 Ohio St.3d 210, 220-222. We can, nevertheless, award appellant his demand for court costs and attorney fees. Id. at 221. We further note that our decision provides a basis for fairly estimating, at the pre-bid stage, the cost of the construction of a public improvement in future cases. Id. at 222.
 {¶ 37} On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Williams County Court of Common Pleas is reversed. This cause is remanded to that court for a determination of appellant's costs, including his attorney's fees. Appellees are ordered to pay the costs of this appeal.
Judgment Reversed.
Peter M. Handwork, P.J., Mark L. Pietrykowski, J., ArleneSinger, J., Concur.
[1] In relevant part, R.C. 4115.03(A) defines a "public authority" as "any political subdivision of a state, authorized to enter into a contract for the construction of a public improvement." A village is a political subdivision of a state. See Rossford Exempted Village School Dist. v. State Bd. ofEducation (1989), 45 Ohio St.3d 356, 359.
[2] A "public improvement" is, among other things, "all buildings * * * constructed by a public authority * * * or by any person who, pursuant to a contract with a public authority, constructs any structure for a public authority of the state or a political subdivision thereof." R.C. 4115.03(C).