DECISION.
{¶ 1} The appellants are some of the trustees of the Cincinnati Retirement System who instituted this taxpayers' action against the city of Cincinnati to protest the city's use of the $54 million received following the demutualization of Anthem Insurance Companies, Inc., and its failure to remit a portion of the proceeds to the retirement system. In a single assignment of error, the appellants argue that the trial court erred by granting the city's motion to dismiss their complaint. We affirm.
 Dismissal of a Complaint Under Civ.R. 12(B)(6) {¶ 2} In order for a complaint to be dismissed pursuant to Civ.R. 12(B)(6), "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery."[1]
Furthermore, "in construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party."[2] "As long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss."[3]
 The Appellants' Complaint {¶ 3} The appellants alleged the following facts in their complaint. The city had established the Cincinnati Retirement System as a defined benefit plan. The retirement system is a trust, separate and distinct from the city, and is to be administered for the exclusive benefit of its participants and beneficiaries. The retirement system is overseen by a board of trustees that administers the assets of the retirement system. The trustees serve as fiduciaries for the retirement system, and their duties are to be performed solely for the interests of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying the reasonable expenses of administering the retirement system.
 {¶ 4} Anthem Insurance Companies, Inc., was a mutual insurance company that provided health-care benefits and insurance products and services. The city purchased health insurance for itself and for the retirement system from Anthem for many years through the city's risk-management fund. The insurance for the retirement system's retirees was purchased through the risk-management fund. The retirement system reimbursed the city for premiums paid by the city for the retirees.
 {¶ 5} In 2001, Anthem demutualized. In other words, Anthem converted from a mutual insurance company to a stock insurance company. As part of the demutualization, each of Anthem's statutory member-policyholders was entitled to a one-time payout in cash or stock representing the mutual's value. As a policyholder, the city received approximately 810,000 shares of stock in Anthem. The city liquidated the stock, and its proceeds, totaling more than $54 million, were deposited in a neighborhood investment capital account.
 {¶ 6} The calculation of the distribution to the Anthem policyholders was based upon the period from January 1, 1990, through June 30, 2000. During that time, the city had paid $91.8 million in premiums to Anthem. The retirement system reimbursed the city for $25.7 million, representing 28 percent of the total premiums.
 {¶ 7} The city did not remit any of the demutualization proceeds to the retirement system. The appellants made a written request that the city solicitor initiate legal action to compel the transfer of a proportionate share of the demutualization proceeds to the retirement system to be held in trust by it and used for the exclusive benefit of its members. The city solicitor refused to do so.
 {¶ 8} The appellants then initiated a taxpayer action pursuant to R.C. 733.59, alleging that the city had failed in its duty to give a portion of the Anthem demutualization proceeds to the retirement system.
 A Taxpayer Suit Under R.C. 733.59 {¶ 9} Under R.C. 733.56 and 733.58, a city solicitor is empowered to apply, in the municipality's name, for an injunction to restrain the misapplication of municipal funds or the abuse of the municipality's corporate powers, or for a writ of mandamus to compel an officer or board of the municipality to perform any duty "expressly enjoined" by law or ordinance. If the solicitor fails to do so following a written request by a taxpayer of the municipality, the taxpayer may institute a suit, in his or her own name, on behalf of the municipality, pursuant to R.C. 733.59.
 {¶ 10} "The word `taxpayer' as used in [R.C. 733.59] contemplates and includes any person who, in a private capacity as a citizen, * * * volunteers to enforce a right of action on behalf of and for the benefit of the public."[4] To maintain an action under R.C. 733.59, the taxpayer's aim must be to enforce a public right, regardless of any personal or private motive.[5] But when the taxpayer's aim is merely for his or her own benefit, no public right exists, and a taxpayer action under R.C. 733.59 cannot be maintained.[6]
 {¶ 11} In State ex rel. Caspar v. Dayton, the Ohio Supreme Court held that police union members lacked standing in a taxpayer action seeking fringe benefits from the city because they had not attempted to enforce a public right.[7] The court noted that the union members' "action to compel fringe benefits for their own benefit" did not represent an attempt to enforce a public right.[8]
 {¶ 12} In this case, the appellants argue that they had properly brought their action as a taxpayer action under R.C. 733.59 because they were pursuing the enforcement of a public right. The appellants argue that the public right involved was the interest of the city's taxpayers in assuring that the city did not retain funds that did not rightfully belong to the city. The thrust of appellants' claim is that the city had failed in its duty to give a portion of the Anthem demutualization proceeds to the retirement system. But we fail to see how a public right was involved in the appellants' claim because the city's taxpayers would have had no interest in giving the city's money away to the retirement system, which is administered for the exclusive benefit of the retirement system's participants and beneficiaries.
 {¶ 13} Because the appellants' aim in pursuing the claim for a portion of the demutualization funds was merely for the benefit of the retirement system and its members, their goal was not to enforce a public right, so the appellants could not have maintained a taxpayer action under R.C.733.59. Accordingly, we hold that the trial court properly granted the city's motion to dismiss the complaint because the appellants lacked standing to bring this action under R.C. 733.59. We overrule the sole assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Hildebrandt, J., concurs.
Painter, J., concurs separately.
Painter, J., concurring separately.
 {¶ 14} I concur, but write separately only to emphasize that we are not holding that the retirement system has no claim — only that a taxpayer action is not the proper method to assert it.
[1] O'Brien v. Univ. Community Tenants Union, Inc. (1975),42 Ohio St.2d 242, 327 N.E.2d 753, syllabus.
[2] Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192,532 N.E.2d 753.
[3] York v. Ohio State Hwy. Patrol (1991), 60 Ohio St.3d 143, 144-145,573 N.E.2d 1063.
[4] State ex rel. White v. Cleveland (1973), 34 Ohio St.2d 37, 40,295 N.E.2d 665, citing State ex rel. Nimon v. Springdale (1966),6 Ohio St.2d 1, 215 N.E.2d 592, paragraph two of the syllabus; see, also, State ex rel. Cater v. N. Olmsted, 69 Ohio St.3d 315, 322-323,1994-Ohio-488, 631 N.E.2d 1048.
[5] State ex rel. White v. Cleveland, supra; State ex rel. Caspar v.Dayton (1990), 53 Ohio St.3d 16, 20, 558 N.E.2d 49.
[6] See State ex rel. Caspar v. Dayton, supra.
[7] Id.
[8] Id. at 20, 558 N.E.2d 49.