CITY OF CINCINNATI ex rel. ZIMMER et al., Appellants,

v.

CITY OF CINCINNATI, Appellee; et al.

[Cite as *Cincinnati ex rel. Zimmer v. Cincinnati,* 176 Ohio App.3d 588, 2008-Ohio-3156.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070709.

Decided June 27, 2008.

Cosme, D'Angelo & Szollosi Co., L.P.A., and Joseph M. D'Angelo, for appellants.

Patricia M. King, Interim Cincinnati City Solicitor, and Terrance A. Nestor, Assistant City Solicitor, for appellee.

DINKELACKER, Judge.

{¶ 1} Relators-appellants, Joseph Zimmer and Anthony Brice, appeal the trial court's judgment granting a motion to dismiss filed by respondent-appellee, the city of Cincinnati. We reverse.

## I. Facts and Procedure

{¶ 2} Zimmer and Brice are residents and taxpayers of the city of Cincinnati. Zimmer is also the executive secretary of the Greater Cincinnati Building and Construction Trades Council. Brice is the vice president of the Laborers' International Union of North America, Local 265. Respondent 353 West Fourth Street L.L.C. ("the developer") is the owner and developer of the Parker Flats Development in downtown Cincinnati.

{¶ 3} Parker Flats consists of a 49–unit housing development built atop a three-story parking garage. One story of the parking garage will be open to the public. The developer received a $600,000 grant from the city to expend on the project. The city also conveyed to the developer, for one dollar, the property on which the project would be constructed, although it had a fair market value of $230,000.

{¶ 4} The funding agreement between the city and the developer provided that the city funding would be expended only on certain aspects of the parking garage. They agreed that the construction of the parking garage was subject to Ohio's

prevailing-wage law.[1] But they treated the housing development separately and proceeded as if that part of the project were exempt from the prevailing-wage law.

{¶ 5} Zimmer and Brice, as taxpayers, sent letters to the city solicitor and the Ohio Attorney General, requesting them to compel the city and the developer to comply with the prevailing-wage law for the housing aspect of the development. When the solicitor and the attorney general failed to act, Zimmer and Brice filed a taxpayer suit under R.C. 733.59. They contended that the construction of the parking garage and the housing development was a single project. They asked the developer to conform to the prevailing-wage law for the housing development or to return the public financing to the city.

{¶ 6} The trial court granted the city's motion to dismiss. It held that Zimmer and Brice were "interested parties" under R.C. 4115.03(F), and therefore that they could bring an action under R.C. Chapter 4115 to enforce the prevailing-wage law. The court went on to state that because they had an adequate remedy at law under that chapter, they should have invoked those remedies and could not circumvent them by filing a taxpayer suit. This appeal followed.

{¶ 7} In their sole assignment of error, Zimmer and Brice contend that the trial court erred in dismissing their taxpayer suit. They argue that they were not interested parties under R.C. 4115.03(F) and that they had no adequate remedy at law. They also argue that a taxpayer suit was an appropriate remedy to enjoin the misapplication of public funds and to enforce the prevailing-wage law. This assignment is well taken.

## II. Standard of Review

{¶ 8} A Civ.R. 12(B)(6) motion to dismiss tests the sufficiency of the complaint. In ruling on such a motion, the trial court must take all the allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party.[2] It may dismiss a complaint on a Civ.R. 12(B)(6) motion only when the plaintiff can prove no set of facts that would entitle the plaintiff to relief.[3]

{¶ 9} In their briefs, the parties cite numerous facts outside the pleadings. Though the parties also filed motions for summary judgment in the trial court, the court did not rule on them. Its opinion stated that it was granting the city's

---

1. See R.C. 4115.03, et seq.

2. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753; *Pollock v. Rashid* (1996), 117 Ohio App.3d 361, 367, 690 N.E.2d 903.

3. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus; *Pollock*, supra, at 367–368, 690 N.E.2d 903.

motion to dismiss and did not show that the court had relied on facts outside of the pleadings. In reviewing the court's decision, we also consider only the facts alleged in the pleadings.

### III. Taxpayer Suits

{¶ 10} R.C. 733.56 requires a city law director to apply in the city's name to a court of competent jurisdiction for "an order of injunction to restrain the misapplication of funds of the municipal corporation, the abuse of its corporate powers, or the execution or performance of any contract made [o]n behalf of the municipal corporation in contravention of the laws or ordinance[s] governing it, or which was procured by fraud or corruption." R.C. 733.59 states that if the law director fails to do so following a taxpayer's written request, the taxpayer "may institute suit in his own name, on behalf of the municipal corporation." [4]

{¶ 11} The word "taxpayer" as used in R.C. 733.59 includes "any person who, in a private capacity as a citizen, elector, freeholder or taxpayer, volunteers to enforce a right of action on behalf of and for the benefit of the public." [5] To maintain a taxpayer suit, the taxpayer's aim must be to enforce a public right, regardless of any personal or private motive. But when the taxpayer's aim is merely to advance his or her own benefit, no public right exists, and the taxpayer cannot maintain an action under R.C. 733.59. [6]

### IV. Public vs. Private Right

{¶ 12} The city contends that since Zimmer and Brice did not seek to enforce a public right, they had no standing to bring a taxpayer's suit under R.C. 733.59. This argument fails because enforcement of the prevailing-wage statutes involves a public right. In our view, a suit seeking the enforcement of the prevailing-wage law is fundamentally different from suits involving enforcement of a collective-bargaining agreement, clarification of benefits under a public-retirement system, or the other interests that courts have found to be private. [7]

---

4. *State ex rel. Fisher v. Cleveland,* 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d 500, ¶ 11; *Cincinnati ex rel. Radford v. Cincinnati,* 1st Dist. No. C–030749, 2004-Ohio-3501, 2004 WL 1486072, ¶ 9.

5. *State ex rel. Nimon v. Springdale* (1966), 6 Ohio St.2d 1, 35 O.O.2d 1, 215 N.E.2d 592, paragraph two of the syllabus; *Radford,* supra, at ¶ 10.

6. *State ex rel. Caspar v. Dayton* (1990), 53 Ohio St.3d 16, 20, 558 N.E.2d 49; *Radford,* supra, at ¶ 10.

7. See *Home Builders Assn. of Dayton & Miami Valley v. Lebanon,* 167 Ohio App.3d 247, 2006-Ohio-595, 854 N.E.2d 1097, ¶ 50–54; *Radford,* supra, at ¶ 10–13; *Assn. of Cleveland Fire Fighters, Local 93 v. Cleveland,* 156 Ohio App.3d 368, 2004-Ohio-994, 806 N.E.2d 170, ¶ 15–

{¶ 13} "[T]he primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector."[8] It "manifests a genuine statewide concern for the integrity of the collective bargaining process in the building and construction trades through a comprehensive statutory plan of worker rights and remedies." It also "has significant extraterritorial effects, beyond the scope of any municipality's local self-government or police powers."[9] Thus, the prevailing-wage law benefits the public as a whole and is of "great general interest."[10]

### V. Interested Parties under the Prevailing–Wage Law

{¶ 14} The complaint alleged that Zimmer and Brice were taxpayers in the city of Cincinnati. The trial court held as a matter of law that they were also "interested parties" within the meaning of the prevailing-wage law. We disagree.

{¶ 15} R.C. 4115.03(F) defines an "interested party" as "(1) [a]ny [party] who submits a bid for the purpose of securing the award of a contract for construction of the public improvement; (2) [a]ny person acting as a subcontractor of a person mentioned in division (F)(1) of this section; (3) [a]ny bona fide organization of labor which has as members or is authorized to represent employees of a person mentioned in division (F)(1) or [(F)](2) of this section and which exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees; (4) [a]ny association having as members any of the persons mentioned in division (F)(1) or [(F)](2) of this section."

{¶ 16} The city argues that Zimmer and Brice met the definition of a "bona fide organization of labor" in R.C. 4115.03.(F)(3). In their complaint, Zimmer and Brice stated that they were officers of unions. They also stated that they both had a "special interest" in ensuring that the city and the developer would "comply with the Ohio prevailing-wage law, the purpose of which is to support the collective bargaining process by preventing the undercutting of employee wages in the private construction section on public-improvements projects."

---

19; *Mayfield Hts. Fire Fighters Assn., Local 1500 v. DeJohn* (1993), 87 Ohio App.3d 358, 365–366, 622 N.E.2d 380.

**8.** *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 431 N.E.2d 311.

**9.** Id., syllabus.

**10.** *W. Unity ex rel. Beltz v. Merillat*, 6th Dist. No. WM–03–016, 2004-Ohio-2682, 2004 WL 1171179, ¶ 17.

{¶ 17} While the Ohio Supreme Court and this court have broadly interpreted the definition of a "bona fide organization of labor," [11] no court has ever held that union officers are the same as the organization. The unambiguous language of the statute refers to an "organization," which, under its plain and ordinary meaning, is an organized group of individuals. [12] Zimmer and Brice were individual taxpayers, and we can find no case law that says that their status as union officials alone rendered them one and the same as their organizations or stripped them of their rights as taxpayers. On the record before us, we cannot hold, as a matter of law, that Zimmer and Brice were interested parties as defined in R.C. 4511.03(F).

### VI. Use of a Taxpayer's Suit to Enforce the Prevailing-Wage Law

{¶ 18} The trial court held that an interested party has an adequate remedy at law and must use the enforcement procedures in R.C. Chapter 4115. That issue is not before us since Zimmer and Brice were not interested parties. The question becomes then whether they, as noninterested parties, could use a taxpayer's suit to enforce the prevailing-wage law.

{¶ 19} Only one appellate district has directly decided the issue. In *Rossford ex rel. Seger v. Zuchowski*, [13] an individual who was both a taxpayer and a union member filed suit under R.C. 733.59. He sought to have the city of Rossford comply with the prevailing-wage statutes on a public improvement. The parties stipulated that the taxpayer was not an interested party. The trial court dismissed the action, finding that the individual's "standing as a taxpayer was insufficient to bring an action to restrain [the city's] violation of the public duties prescribed in the prevailing wage law by means of an injunction."

{¶ 20} The court of appeals reversed. It held that the taxpayer had "met the jurisdictional and procedural prerequisites for maintaining an R.C. 733.59 taxpayer's action" and that he "was clearly entitled to initiate an R.C. 733.59 taxpayer's action."

---

11. See *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Mohawk Mechanical, Inc.* (1999), 86 Ohio St.3d 611, 613–614, 716 N.E.2d 198; *Pipe Fitters Union Local 392 v. Kokosing Constr. Co., Inc.* (Aug. 23, 1996), 1st Dist. Nos. C–950220 and C–950234, 1996 WL 482932, reversed on other grounds (1998), 81 Ohio St.3d 214, 690 N.E.2d 515.

12. See *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 300, 703 N.E.2d 782; *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463; *Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 176 Ohio App.3d 157, 2008-Ohio-1434, 891 N.E.2d 352, ¶ 14; *Haghighi v. Moody*, 152 Ohio App.3d 600, 2003-Ohio-2203, 789 N.E.2d 673, ¶ 12; *Peskin v. Seasons Health Care LP* (2001), 141 Ohio App.3d 436, 440, 751 N.E.2d 546.

13. (Apr. 12, 2002), 6th Dist. No. WD–01–042, 2002 WL 538013.

{¶ 21} The court reiterated that holding in a later case, stating that "[t]his court has previously determined that a taxpayer has the requisite standing to bring suit under R.C. 733.59 to challenge a public authority's failure to comply with the prevailing wage law."[14] The Ohio Supreme Court refused to accept that case for review.[15]

{¶ 22} We find *Zuchowski* and its progeny to be persuasive.[16] We also find that they are consistent with both Ohio Supreme Court and our own precedent. In *Zuchowski*, the court cited an Ohio Supreme Court decision, *United States Corrections Corp. v. Ohio Dept. of Indus. Relations.*[17] That case involved statutes relating to taxpayer suits against county officials.[18] A county had originally filed a declaratory-judgment action involving competitive-bidding and prevailing-wage-law issues on a county project. The taxpayer filed a counter-claim challenging the county's failure to follow the competitive-bidding statutes. The court held that the taxpayer was "clearly entitled to maintain a taxpayer's action in his counterclaim against the board of [county] commissioners."[19]

{¶ 23} This court has also decided a case in which the parties used a taxpayer suit to raise issues under the prevailing-wage law. In *State ex rel. Jones v. Hamilton Cty. Bd. of Commrs.*,[20] a union and two taxpayers filed a taxpayer suit challenging the county's use of inmates to paint the county jail. They contended that the project was a public improvement subject to the prevailing-wage laws. We rejected the claim on the merits, holding that the prevailing-wage laws did not apply to inmates performing voluntary labor because they were not employees and did not receive wages.[21]

{¶ 24} We did not specifically address the issue whether a taxpayer suit was the appropriate vehicle to raise the prevailing-wage-law issue. We could have raised it sua sponte if we had found it to be dispositive, but we did not.

---

14. *Merillat,* supra, 2004-Ohio-2682, 2004 WL 1171179, at ¶ 35.

15. 103 Ohio St.3d 1463, 2004-Ohio-5056, 815 N.E.2d 678.

16. See also *State ex rel. Duffey v. Neighborhood Properties, Inc.*, 134 Ohio Misc.2d 1, 2005-Ohio-5060, 836 N.E.2d 61, ¶ 4–6.

17. (1995), 73 Ohio St.3d 210, 652 N.E.2d 766.

18. See R.C. 309.12 and 309.13.

19. *United States Corrections Corp.*, supra, 73 Ohio St.3d at 221, 652 N.E.2d 766.

20. (1997), 124 Ohio App.3d 184, 705 N.E.2d 1247.

21. Id. at 195, 705 N.E.2d 1247.

{¶ 25} Persuaded by *Zuchowski* and following our own precedent, we hold that individuals who are not interested parties under R.C. 4115.03(F) may use a taxpayer suit to challenge a public official's failure to enforce the prevailing-wage law. Consequently, the trial court erred in dismissing Zimmer and Brice's complaint. We sustain Zimmer and Brice's assignment of error, reverse the trial court's judgment, and remand the case to the trial court for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

HILDEBRANDT, P.J., and PAINTER, J., concur.